[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2012
JOHN LEY
CLERK

_____

No. 10-13349

_____

D. C. Docket No. 1:07-cr-00195-RWS-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADAM WAYNE LEBOWITZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 5, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

A jury convicted Adam Wayne Lebowitz of producing child pornography in violation of 18 U.S.C. § 2251(a) and (e), and of attempting to entice a child to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). The district court sentenced Lebowitz to 320 months' imprisonment on each count, to run concurrently. After examining each issued raised by Lebowitz on appeal, we affirm his convictions and sentences.

## I. FACTS

When K.S. was 15 years old, he registered for a MySpace account. For MySpace profiles to be viewable by the public, the user must attest to being over the age of 21. K.S. desired such a profile, so he falsely claimed he was 21 years old on the registration form. K.S. then created an on-line profile that suggested his age was either 17 or 18 years old. On October 25, 2006, Lebowitz, whose MySpace profile identified himself as a 47-year-old doctor, sent a message to K.S. via his MySpace account, saying: "that's a great pic of you hitting the [base]ball. [G]ot any more pics of you playing?" Lebowitz provided K.S. with his contact information, and the two engaged in on-line chats and exchanged e-mails. The chats were sexual in nature, and Lebowitz sent K.S. nude photographs of himself. In one of these initial chats, K.S. told Lebowitz he was 15 years old.

After communicating with Lebowitz for a day, K.S. informed his mother of the chats and messages. K.S.'s mother obtained Lebowitz's phone number from one of his e-mails, phoned him, and threatened to kill him if he did not stop contacting her son. Lebowitz then sent K.S. a chat message asking him if anything was wrong. K.S's mother contacted law enforcement.

On October 27, 2006, K.S. and his mother met with Investigator Beth Suber of the Coweta County Sheriff's Office. At Investigator Suber's suggestion, K.S.'s mother agreed to allow K.S. to continue corresponding with Lebowitz in order to determine Lebowitz's intentions. Investigator Suber instructed K.S. to make his true age clear to Lebowitz during on-line conversations. During one on-line chat, K.S. told Lebowitz: "i [sic] would drive up there but im [sic] only 15 and odnt [sic] have a car." Lebowitz replied: "coming to get you is not a problem."

Lebowitz and K.S. also conversed by phone. Investigator Suber recorded the phone calls. In the last phone call, K.S. and Lebowitz arranged to meet at K.S.'s home the following day. K.S. again mentioned he was only 15 years old. Lebowitz responded in a surprised tone, "I thought you were 17." K.S. again said he was 15. After a pause, Lebowitz responded, "you know, I've never met someone who's underage." Lebowitz claimed he did not want any trouble, and asked K.S. when he would have his next birthday. After hearing that K.S. would

3

not be 16 years old for another 6 months, Lebowitz said he "started" when he was 14, and that they would only "do stuff that feels right" because "friendship is more important than getting off." Lebowitz told K.S. he liked "athletic guys," that he had "been looking for a good friend here that [he] could kinda mess around with," and that K.S. was "definitely that kind of guy." Lebowitz again asked K.S. if it was safe to meet because he did not "want to get arrested or anything." After K.S. reassured him, Lebowitz reminded K.S. to bring his baseball uniform because Lebowitz found it "really hot." Lebowitz also told K.S. that he thought men were better than women at giving other men oral sexual stimulation, and that going out with younger guys was "an adventure."

On November 2, 2006, Lebowitz arrived at K.S.'s home. Investigator Suber arrested Lebowitz and searched his vehicle. In the front seat she found a backpack that contained condoms and lubricants. She also found two sleeping bags and two towels. Investigator Suber then obtained a warrant to search Lebowitz's residence. Upon searching the residence, she seized a Sony notebook computer, an iPod, a HP Pavillion computer with camera, a printout of a phone number "look-up," a piece of paper with the victim's name and address, pieces of paper with various screen names and emails, CD-R's, a Sony CPU, a green file with various MySpace printouts of screen names and email addresses, VHS tapes,

4

bottles of Astro-glide, and various types of condoms.  A VHS tape labeled "XXX" contained video of Lebowitz engaged in sexual acts with teenage males.

Agents were able to identify A.G. and C.R. as the males on the VHS tape engaged in sexual activity with Lebowitz.  Agents also discovered still images from the videos of A.G. and C.R. on Lebowitz's computer, stored in a manner indicating that the images had been distributed over the internet.  A.G. and the defendant began a sexual relationship when A.G. was 16 years old.  However, A.G. provided conflicting statements regarding whether he was under the age of 18 at the time the video was made.  C.R. began engaging in sexual relations with Lebowitz when C.R. was 15 years old.  Lebowitz and C.R. engaged in sexual acts on at least ten occasions.  All but the sexual encounter on the videotape occurred in Lebowitz's car.  When C.R. was 16 years old, Lebowitz asked C.R. to make a videotape of their sex acts.  C.R. agreed.  C.R. met Lebowitz at their normal rendezvous location.  Lebowitz had brought a tripod and camera, but told C.R. there was not enough space in the car to make the video.  Lebowitz crawled through C.R.'s bedroom window, Lebowitz set up the video equipment in C.R.'s bedroom, and Lebowitz recorded their sexual acts.

## II. PROCEDURAL HISTORY

On June 12, 2007, a federal grand jury charged Lebowitz with two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and one count of attempting to entice a child to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b).  Lebowitz moved to have the indictment dismissed, suppress evidence found during the searches of his car and his house, and sought to exclude printouts of the chats with K.S. on authenticity grounds.

*A. Pretrial Motions*

A magistrate judge recommended denying the motion to suppress the evidence found at Lebowitz's house.  The magistrate judge found that: (1) Lebowitz was not entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978); (2) the warrant was supported by probable cause; (3) the warrant was not overly broad; and (4) even if the warrant was defective, Investigator Suber had a good-faith basis to believe it was valid.  The district court adopted the recommendation, and denied the motion to suppress the evidence seized from Lebowitz's home.  The district court also denied the motion to dismiss the indictment.

The district court held a hearing on Lebowitz's motion to suppress evidence seized from his car and his challenge to the authenticity of the chat printouts.  As

6

to the search of the car, Investigator Suber testified that she believed she could search the car incident to Lebowitz's arrest. Investigator Suber's investigative report also stated this rationale. However, the district court denied the motion to suppress on an alternative basis, finding that Investigator Suber could have reasonably expected to find evidence in Lebowitz's car associated with the offense for which he was arrested.

As to the authenticity of the chat printouts, Investigator Suber testified that K.S. printed the chats and delivered them to her. K.S. confirmed to Investigator Suber that the messages were exactly what was on his computer. Investigator Suber testified that a section of chat messages was missing, but that the remainder appeared unaltered. In his trial testimony, K.S. confirmed Investigator Suber's account.

In response, Lebowitz offered the testimony of Jim Persinger, a computer forensics expert. Persinger testified that K.S.'s method of producing the printouts created a possibility for alteration. However, Persinger admitted that he had no evidence of any alteration or tampering. Persinger also admitted that the substance of many of the chats was corroborated by e-mail messages and subsequent events. The district court determined that the Government had made a prima facie showing of authenticity, and refused to exclude the printouts.

*B. Trial*

The case proceeded to trial. At the close of the Government's case and at the close of the evidence, Lebowitz unsuccessfully moved for judgments of acquittal. During deliberations, the jury submitted multiple written questions to the court, all pertaining to the enticement of K.S. The jury reached a verdict on the first two counts but claimed deadlock on count three. The district court gave an *Allen* charge. After six more hours of deliberation, the jury reached three unanimous verdicts. The jury found Lebowitz not guilty of count one (concerning the video of A.G.); guilty of count two (concerning the video of C.R.); and guilty of count three (concerning the enticement of K.S.).

*C. Sentencing*

On July 12, 2010, the district court held Lebowitz's sentencing hearing. The district court ruled on Lebowitz's objections to his Presentence Investigation Report (PSI), and established Lebowitz's total offense level as 40, his criminal history category as I, and his advisory Guidelines range as 292 to 365 months' imprisonment. Lebowitz, who is HIV positive, presented expert testimony concerning the risk of transmitting HIV through unprotected oral sex. Although the expert acknowledged the behavior was irresponsible, he insisted the risk of transmission was very minimal.

8

After the expert's testimony and counsel's arguments, the district court discussed the § 3553(a) factors. The district court observed that Lebowitz had a commendable and compassionate professional life, but had also taken advantage of inexperienced minors. The district court faulted Lebowitz for engaging in sexual conduct with C.R. and A.G. without disclosing his HIV status, describing the risk of transmission as low but "unnecessary." The court conceded that it had seen "far worse cases" of child pornography, observed that Lebowitz encountered the children on sites designed for adults, but expressed concern that Lebowitz "kept going" despite knowing the age of the boys, twice engaging in sexual contact with 15-year-old boys. The sentencing court noted the need to provide deterrence and protect the public from further crimes. After noting it had considered all of the § 3553(a) factors, the district court sentenced Lebowitz to concurrent terms of 320 months' imprisonment.

## III. AUTHENTICITY AND BEST EVIDENCE

Lebowitz argues that the district court abused its discretion by admitting into evidence printouts of internet chat conversations between K.S. and Lebowitz. This court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011). The factual findings underlying those rulings are reviewed for clear error. *Id.*

9

Lebowitz argues that admission of the printouts violated the authentication requirement in Federal Rule of Evidence 901. To authenticate a document, Rule 901 only requires a proponent to present "sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be." *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) (quotation omitted). After meeting the prima facie burden, the evidence may be admitted, and the ultimate question of authenticity is then decided by the jury. *Id.* "A district court has discretion to determine authenticity, and that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000). "Evidence may be authenticated through the testimony of a witness with knowledge." *Lanzon*, 639 F.3d at 1301 (citing Fed. R. Evid. 901(b)(1)).

Here, K.S. testified that he had printed out the chats and that the printouts submitted into evidence accurately reflected the chat messages. K.S. also told the jury he could not remember certain aspects of how the printouts were created. However, "[a]ppellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony." *Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir. 1983). We find that the district court did not clearly err by finding K.S. credible.

10

Accordingly, the Government met its prima facie burden under Rule 901, leaving the ultimate question of authenticity for the jury.

Lebowitz also argues that the admission of the printouts violated the best evidence rule because the printouts did not accurately reflect the data stored in K.S.'s computer. *See* Fed. R. Evid. 1001-1004. Federal Rule of Evidence 1002 requires introduction of an original document. Federal Rule of Evidence 1001(3) defines "original" to include a printout of computer data shown to accurately reflect that data. Accuracy of the printout is a preliminary question of admissibility to be determined by the court. Fed. R. Evid. 104(a) & 1008. Here, the district court credited K.S.'s testimony concerning the accuracy of the printouts, and we defer to that credibility determination. *See Owens*, 698 F.2d at 1113. The district court did not clearly err by admitting the printouts as originals.

## IV. MOTIONS TO SUPPRESS

*A. Warrantless Search of Automobile*

Investigator Suber searched Lebowitz's car after he was arrested at K.S.'s residence, and discovered evidence of Lebowitz's intentions, including sleeping bags and a zip-lock bag full of condoms and lubricants. The district court refused to suppress the evidence seized from Lebowitz's car. We review the district court's findings of fact for clear error. *United States v. Farley*, 607 F.3d 1294,

1325-26 (11th Cir. 2010). The application of the exclusionary rule's good-faith exception is a legal issue we review de novo. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Even assuming Investigator Suber's search of Lebowitz's car violated his Fourth Amendment rights, the good-faith exception to the exclusionary rule applies to a police officer's reliance on binding Circuit precedent. *Davis v. United States*, __ U.S. __, 131 S. Ct. 2419, 2429 (2011). In searching the car, Investigator Suber relied on our precedent, which until recently allowed a search incident to a recent occupant's arrest regardless of the occupant's ability to access the passenger compartment. *See United States v. Davis*, 598 F.3d 1259, 1262 (11th Cir. 2010), *aff'd*, 131 S. Ct. 2419 (2011); *United States v. Gonzalez*, 71 F.3d 819, 825-26 (11th Cir. 1996). Investigator Suber's good-faith reliance on that precedent precludes exclusion of the evidence seized from Lebowitz's car. The district court correctly denied the motion to suppress.

*B. Search Warrant for Home*

Lebowitz requested a *Franks* hearing to challenge the validity of Investigator Suber's affidavit supporting the warrant to search his home. Lebowitz claimed Investigator Suber intentionally or recklessly omitted from her

affidavit that K.S. had provided a false age on his MySpace page. The district court refused to hold a hearing.

We will review the district court's refusal to hold a *Franks* evidentiary hearing de novo.[1] We review de novo a probable cause determination. *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011).

Affidavits supporting warrants are presumptively valid. *Id.* "[I]ntentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (citation omitted). The defendant bears the burden of demonstrating that the alleged omission would have prevented a finding of probable cause. *See United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001).

"Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Kapordelis*, 569 F.3d

---

[1] Generally, a district court's refusal to hold an evidentiary hearing is reviewed for an abuse of discretion. *United States v. Kapordelis*, 569 F.3d 1291, 1308 (11th Cir. 2009). However, this Court has not established the standard of review applicable to a district court's refusal to hold a *Franks* hearing. *Id.* Other courts of appeals disagree on the appropriate standard. *See United States v. Arbolaez*, 450 F.3d 1283, 1293 n.11 (11th Cir. 2006) (collecting cases). Because the district court's decision survives de novo review, we decline to determine whether a less-exacting standard applies. *See United States v. Gamory*, 635 F.3d 480, 490 n.13 (11th Cir. 2011).

at 1310 (quotation omitted). When law enforcement seeks a warrant to search a residence, "the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home." *Id.* (quotation omitted). The affidavit need not allege illegal activity occurred at the home, *id.*, but "the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Martin*, 297 F.3d at 1314.

Lebowitz argues that the timing of his knowledge of K.S.'s age creates an innocent explanation for his conduct, and therefore the inclusion of K.S.'s misleading statements about his age would have prevented a finding of probable cause. However, a post-hoc innocent explanation for incriminating behavior does not vitiate a finding of probable cause. *See United States v. Gonzalez*, 969 F.2d 999, 1003-04 (11th Cir. 1992). Lebowitz engaged in graphic sexual conversations with K.S. Any ambiguity as to K.S.'s age is immaterial because Lebowitz admits he learned that K.S. was a 15-year-old boy prior to appearing at K.S.'s home possessing condoms and lubricants. These facts established probable cause to support Lebowitz's arrest for attempted child molestation. Lebowitz's use of his home computer to contact his intended sexual partner established the necessary connection between his residence and his suspected criminal activity. Those

14

contacts need not have been illegal to provide a reasonable basis to believe that evidence of Lebowitz's attempted child molestation would be recovered from his home. Because inclusion of the alleged omission would not have prevented a finding of probable cause, a *Franks* hearing was unnecessary.

Lebowitz also sought to suppress the VHS tape seized during the search of his home, contending that probable cause did not support inclusion of "pornographic material" and "any items commonly found in child pornogrphic [sic] cases" in the warrant as items to be seized. The district court refused to suppress the VHS tape.

Even if we were to accept Lebowitz's argument that probable cause did not support inclusion of "pornographic material" and "any items commonly found in child pornogrphic [sic] cases" in the warrant, we find that the good-faith exception to the exclusionary rule would apply.[2] Generally, courts should not exclude evidence obtained by police officers acting in reasonable reliance on a search warrant. *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984). Only four limited sets of circumstances prevent use of the good-faith exception.

---

[2] As previously stated, the application of the exclusionary rule's good-faith exception is a legal issue we review de novo. *Martin*, 297 F.3d at 1312.

15

*Martin*, 297 F.3d at 1313.  None are applicable here.  The district court correctly refused to suppress the VHS tape.[3]

## V.  CONSTITUTIONAL CHALLENGE TO 18 U.S.C. § 2251(a)

Lebowitz challenges the constitutionality of 18 U.S.C. § 2251(a),[4] contending that the statute conflicts with the age of consent in Georgia and therefore fails to provide sufficient notice that his conduct was illegal.[5]

---

[3] In addition to "pornographic material" and "any items commonly found in child pornogrphic [sic] cases," the search warrant separately authorized seizure of "video tapes." Lebowitz does not challenge the inclusion of "video tapes" in the search warrant.  Thus, even if the challenged items were unsupported by probable cause, suppression of any video tape, including the VHS tape labeled "XXX," would be inappropriate.  *See United States v. Cook*, 657 F.2d 730, 734-35 (5th Cir. Unit A Sept. 1981); *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 706-07 (9th Cir. 2009); *United States v. Sells*, 463 F.3d 1148, 1155-56 (10th Cir. 2006); *United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992); *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991); *United States v. Fitzgerald*, 724 F.2d 633, 636-37 (8th Cir. 1983); *United States v. Riggs*, 690 F.2d 298, 300 & n.5 (1st Cir. 1982); *United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982).  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[4] 18 U.S.C. § 2251(a) provides that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if such visual depiction has actually been . . . transmitted using any means or facility of interstate . . . commerce. . . ."  18 U.S.C. § 2256(1) defines a minor as "any person under the age of eighteen years."

[5] Lebowitz also argues that because the age of consent in Georgia is 16, *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472 (2003), protects his conduct.  *Lawrence* concerned private conduct between consenting adults.  *Id.* at 578, 123 S. Ct. at 2484.  Even if *Lawrence* protected the sexual conduct depicted on the video tape, the jury found beyond a reasonable doubt that the depictions created by Lebowitz traveled across state lines by means of computer. Thus, the depictions of Lebowitz's private conduct became publicly traded contraband.  *Lawrence* is therefore immaterial to our as-applied due process analysis.

We review de novo a challenge to a statute's constitutionality. *Belfast*, 611 F.3d at 803. Lebowitz does not base his vagueness challenge on the First Amendment. *Cf. New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348 (1982).[6] Therefore, his vagueness challenge is an as-applied challenge. *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010). The Fifth Amendment's Due Process Clause requires that a statute provide fair warning to people of common intellect that certain conduct is prohibited. *Id.* If the statute fails to provide a person of ordinary intelligence fair warning, or authorizes arbitrary and discriminatory enforcement, the statute is void. *Id.* However, statutes are given a strong presumption of validity. *Id.* A defendant's ignorance of the law is not a defense, even when state law appears in conflict with federal law. *See United States v. Ortiz-Graulau*, 526 F.3d 16, 19 (1st Cir. 2008).

A person of common intellect who reads 18 U.S.C. § 2251(a) would know that a person who persuades a 16 year old to engage in sexual conduct for the

---

[6] Lebowitz makes only passing reference to "overbreadth" in his brief, and we find this argument waived. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). Even if the argument were not waived, it fails. We have held that the overbreadth doctrine is reliant on a First Amendment analytical framework, and is therefore inapplicable outside the First Amendment context. *United States v. McGarity*, 669 F.3d 1218, 1233 n.19 (11th Cir. 2012). Further, § 2251(a) is a conduct-regulating statute reflecting a legitimate government interest that is not substantially overbroad. *See United States v. Waymer*, 55 F.3d 564, 569 (11th Cir. 1995). Any hypothetical overbreadth that does exist should only be addressed on a case-by-case basis. *Id.*

purpose of recording it, and later transmits that recording over the internet, would be in violation of federal law. Lebowitz's vagueness challenge fails.

## VI. SUFFICIENCY OF THE EVIDENCE

Lebowitz challenges the sufficiency of the evidence on both counts of conviction. Lebowitz contends his § 2251 conviction lacked sufficient evidence of purpose because the recording was only incidental to his sexual encounter with C.R. As for his conviction under 18 U.S.C. § 2422(b), Lebowitz contends that the Government failed to prove his criminal intent.

We review the sufficiency of the evidence in a criminal trial de novo. *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008). We must: (1) view the evidence in the light most favorable to the government; (2) resolve any conflicts in favor of the government; (3) accept all reasonable inferences that tend to support the government's case; and (4) assume that the jury made all credibility choices in support of the verdict. *Id.* "In rebutting the government's evidence '[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006) (alteration in original)).

18

*A. Count Two – 18 U.S.C. § 2251(a)*

Section 2251(a) required the Government prove beyond a reasonable doubt that one purpose of the sexually explicit conduct was to produce a visual depiction. 18 U.S.C. § 2251(a). The Government did not have to prove that Lebowitz was single-minded in his purpose. *See Ortiz-Graulau*, 526 F.3d at 19; *cf. United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996) ("The criminal law applies to everyone, not just the single-minded. And a person who transports children across state lines both to engage in sexual intercourse with them and to photograph that activity is no less a child pornographer simply because he is also a pedophile.")

Lebowitz claims the recording was only incidental to his sexual encounter with C.R. The evidence belies his argument. C.R. testified that he and Lebowitz discussed videotaping a sexual encounter prior to the recording. Lebowitz brought the camera and a tripod, carried them through C.R.'s bedroom window, and set up the equipment. The sexual encounter occurred in C.R.'s bedroom only because there was not room for the recording equipment in Lebowitz's car. Such purposeful conduct cannot be described as incidental. *See Ortiz-Graulau*, 526 F.3d at 19 ("This is not a case of a security camera mechanically picking up a random act."); *Webster's Third New Int'l Dictionary* 1142 (3d ed. 1976) (defining

19

"incidental" as "occurring merely by chance or without intention or calculation"). Whether some other sexual encounter would have occurred even without recording equipment is irrelevant. A reasonable jury could conclude Lebowitz violated 18 U.S.C. § 2251(a).

B. *Count Three – 18 U.S.C. § 2422(b)*

Section 2422(b) required the Government prove beyond a reasonable doubt that Lebowitz intended to engage in criminal sexual activity with K.S. Lebowitz argues that the evidence of his intent was ambiguous. Lebowitz contends the evidence does not support a finding that he believed K.S. was 15 years old during their initial conversations, and that he abandoned any ill motive upon learning K.S.'s true age.

K.S. testified that he told Lebowitz in one of his first chats that he was 15 years old. Credibility questions are answered by the jury, and we will assume that the jury answered them in a manner that supports its verdict. *Thompson*, 473 F.3d at 1142. Further, the internet chat printouts provide significant additional evidence that Lebowitz was aware of K.S.'s age. Finally, even after K.S. had told Lebowitz on the phone that he was 15 years old, Lebowitz continued to entice K.S. In convicting Lebowitz, the jury was free to rely on any combination of these facts. *See Schad v. Arizona*, 501 U.S. 624, 632, 111 S. Ct. 2491, 2497 (1991)

("[T]here is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." (quotation omitted)). The evidence supports the jury's verdict.

## VII. JURY INSTRUCTIONS

Lebowitz challenges the district court's jury instructions on both counts of conviction. This court reviews a district court's rejection of a proposed jury instruction for abuse of discretion. *United States v. Merrill*, 513 F.3d 1293, 1305 (11th Cir. 2008).

A trial court enjoys broad discretion to formulate jury instructions provided those instructions are correct statements of the law. *Id.* A refusal to incorporate a requested instruction will be reversed only if "(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." *United States v. Culver*, 598 F.3d 740, 751 (11th Cir. 2010) (quotation omitted). Further, an instruction that tracks the statute's text will almost always convey the statute's requirements. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). "Under our deferential standard of review, we reverse only if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations."

21

*United States v. Browne*, 505 F.3d 1229, 1276 (11th Cir. 2007) (quotation omitted).

A. *Count Two – 18 U.S.C. § 2251(a)*

Lebowitz argues that the district court failed to adequately instruct the jury as to the elements of § 2251(a). Lebowitz's requested instruction would have required the jury to find beyond a reasonable doubt that "the making of the visual depiction of sexually explicit conduct was a dominant motive for Defendant's actions toward . . . C.R. . . . , and was not merely incidental to their interactions." Instead, the district court's instruction tracked the statutory language, requiring the jury to find beyond a reasonable doubt that Lebowitz "employed, used, persuaded, induced, enticed or coerced the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."

In support of his "dominant motive" requirement, Lebowitz cites *Mortenson v. United States*, 322 U.S. 369, 64 S. Ct. 1037 (1944), and *Forrest v. United States*, 363 F.2d 348 (5th Cir. 1966). Both are Mann Act cases involving crimes other than the production of child pornography. Even if Mann Act precedent applies to 18 U.S.C. § 2251(a), refusal to give the requested instruction would not have been error. "This court has long declined to extend the doctrine of *Mortensen* beyond its facts." *Forrest*, 363 F.2d at 350. Instead, we have held that

22

dual purposes are sufficient for a conviction, and we "need not concern ourselves" with whether the illegal purpose was dominant over other purposes. *Id.* at 352. Our model Mann Act jury instructions reflect this holding. *See* Eleventh Circuit Model Jury Instruction 79.2, 92.1, 93.1, 93.2, 93.4 (2010). Thus, the requested "dominant motive" language was substantively incorrect, and the district court correctly refused to give the instruction.

As for the "merely incidental" language, Lebowitz has not demonstrated that the failure to include this language substantially impaired his ability to present an effective defense. Lebowitz argued repeatedly to the jury that the video recording of C.R. was incidental to their consensual relationship. Lebowitz could make this argument because incidental acts are, by definition, the opposite of purposeful ones. *Webster's Third New Int'l Dictionary* 1142, 1847 (3d ed. 1976) (defining "incidental" as "occurring merely by chance or without intention or calculation" and "purposeful" as "guided by a definite aim"). Omission of the requested "merely incidental" language did not impair Lebowitz's ability to present an effective defense, and the district court did not abuse its discretion.

B. *Count Three – 18 U.S.C. § 2422(b)*

Lebowitz requested that the jury be instructed that "Defendant must have [believed K.S. was under 18 years of age] during the time he was using a computer

23

to communicate with [K.S.]"[7]  The district court refused.  Instead, the district court instructed the jury on the elements of the charged offense by tracking the statutory language.[8]

The jury's questions do not create the "substantial and eradicable doubt" required for reversal of its verdict.  *See Browne*, 505 F.3d at 1276. The subject matter of Lebowitz's requested instruction was substantially covered by the district court's overall charge to the jury.  Further, the district court's refusal to give the requested instruction did not impair Lebowitz's ability to present his defense.  The district court did not abuse its discretion.

## VIII.  SENTENCING

---

[7] At the charge conference, Lebowitz attempted to amend the requested instruction to include all instruments of interstate commerce.  Such an oral request does not comply with Federal Rule of Criminal Procedure 30(a), and refusal of the oral request could not be an abuse of discretion.  *See United States v. Cunningham*, 194 F.3d 1186, 1200 (11th Cir. 1999).  However, even if Lebowitz had properly requested the broader instruction, our conclusion would be the same.

[8] The district court instructed the jury as follows:  "First, that the Defendant knowingly used a facility of interstate or foreign commerce, including transmissions by computer on the internet, to attempt to persuade, induce, entice or coerce any individual under the age of 18 years to engage in sexual activity; second, that the Defendant believed that such individual was less than 18 years of age; third, that if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under the laws of the State of Georgia; and fourth, that the Defendant acted knowingly and willfully."

Lebowitz challenges both the procedural and substantive reasonableness of his sentence. We review a district court's factual findings for clear error, and its interpretation and application of the Guidelines de novo. *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011). We review the reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1188-89 (11th Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 1813 (2011).

*A. Procedural Reasonableness*

Lebowitz argues that the district court erred in calculating the Guidelines range for count three by imposing an enhancement for use of a computer pursuant to U.S.S.G. § 2G1.3(b)(3). However, the enhancement failed to impact the combined offense level used to calculate Lebowitz's advisory Guidelines range.[9] Any error in applying the enhancement was harmless. *See United States v. Sarras*, 575 F.3d 1191, 1220 n.39 (11th Cir. 2009).

*B. Substantive Reasonableness*

Lebowitz argues that the sentencing court abused its discretion by:

(1) considering Lebowitz's HIV-positive status; (2) failing to adequately consider

---

[9] At the sentencing hearing, the district court sustained two of Lebowitz's objections. These rulings created a disparity of ten offense levels between the count two and count three calculations. As a result, the Guidelines required that the count three calculation be entirely disregarded. *See* U.S.S.G. § 3D1.4(c). Thus, applying the § 2G1.3(b)(3) enhancement in the count three calculation had no impact on the final combined offense level.

mitigation evidence; and (3) imposing an unreasonable sentence. Lebowitz has the burden of showing that the sentence was unreasonable in light of the record and the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). Those factors include, among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public from further crimes committed by the defendant; and (5) the Guidelines range. 18 U.S.C. § 3553(a). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189 (quotation omitted).

We will reverse a sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quotation omitted). Although we do not presume that a sentence within the Guidelines range is reasonable, *United States v. Hunt*, 526 F.3d 739, 746 (11th

26

Cir. 2008), we ordinarily expect such a sentence to be reasonable. *Talley*, 431 F.3d at 788.

Lebowitz fails to demonstrate that his sentence is substantively unreasonable. Lebowitz's clandestine exposure of his minor victims to even a minimal risk of HIV infection was a circumstance of his offense conduct. Because Lebowitz's HIV status was relevant to his offense conduct, it was properly considered by the district court. As for the mitigation evidence offered by Lebowitz, the record demonstrates that the sentencing court did consider Lebowitz's "history of having done many good things," and that Lebowitz's conduct was not the "most extreme" the district court had seen. A lack of a downward variance alone does not demonstrate that the district court failed to afford consideration to these factors. *See United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) ("[T]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." (quotation marks omitted)); *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007) ("[A] district court's failure to give mitigating factors the weight a defendant contends they deserve [does not] render[] the sentence unreasonable.").

Finally, Lebowitz fails to demonstrate that his within-Guidelines, 320-month total sentence was a clear error of judgment. "Child sex crimes are among

27

the most egregious and despicable of societal and criminal offenses . . . ." *Sarras*, 575 F.3d at 1220. Lebowitz sexually assaulted C.R. when C.R. was only 15 years old, produced child pornography with C.R. when C.R. was 16 years old, distributed that child pornography over the internet, and attempted to sexually assault another 15-year-old boy. The district court carefully balanced these heinous crimes against Lebowitz's lack of criminal history and admirable work as a paramedic and a doctor. Lebowitz's concurrent terms of 320 months' imprisonment do not fall outside the range of reasonable sentences from which the district court could permissibly choose. *See Irey*, 612 F.3d at 1189. Accordingly, we affirm Lebowitz's sentences.

## IX. CONCLUSION

For the reasons stated above, we reject Lebowitz's challenges to his convictions and sentences. The judgment of the district court is affirmed.

**AFFIRMED.**