[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15678
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-20805-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EMMA GRISMALDA CASANOVA,
a.k.a. Emma Grismalda Alvarez,
a.k.a. Gabriela Rossova,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 19, 2012)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Emma Grismalda Casanova appeals her sentence of 88 months of imprisonment following her pleas of guilty to one count of conspiring to commit fraud, 18 U.S.C. § 1349, two counts of bank fraud, id. § 1344, two counts of stealing and purloining money from a bank, id. § 2113(b), one count of conspiring to launder money, id. § 1956(h), one count of conspiring to structure financial transactions to evade reporting requirements, id. § 371, and ten counts of structuring financial transactions to evade reporting requirements, 31 U.S.C. § 5324(a)(3).  Casanova challenges two enhancements of her offense level for her role as a manager or supervisor and for using unlawfully a means of identification. Casanova also challenges the award of restitution to Wachovia Bank and the substantive reasonableness of her sentence.  We affirm.

The district court did not clearly err when it enhanced Casanova's offense level for her role as a manager or supervisor.  A defendant is subject to a three-level enhancement of her sentence if her "criminal activity involved five or more participants or was otherwise extensive."  United States Sentencing Guidelines Manual § 3B1.1(b) (Nov. 2010).  The district court found that Casanova's fraud was extensive, and the evidence supports that finding.  See id. cmt. n.4.  Casanova conspired with her grandson, Noel Mendez, and Juan Carlos Rodriguez-Rodriguez

2

to embezzle the funds in two dormant certificate of deposit accounts at Wachovia Bank. The dormant accounts were named "Mrs. Julia Striker—deceased and Miss Gabriela Rossova" (Striker/Rossova account) and "Flora Botton-Burla" (Botton-Burla account). Casanova, a native and citizen of Peru, obtained fraudulent identification documents, including a foreign passport, that identified her as "Gabriela Rossova," a native and citizen of Colombia, and listed an address in Bogota. Casanova used the fraudulent identification documents to open an account at Interamerican Bank under the name "Gabriela Rossova." In the meantime, Mendez, a financial advisor at Wachovia, changed the addresses on both dormant accounts to match the Bogota address listed on Casanova's identification documents and changed the name of the second account from "Flora Botton-Burla" to "Flora Botton-Burla and Gabriela Rossova." Casanova used the false identification documents to withdraw $718,234.39 from the Striker/Rossova account. A bank employee questioned the authenticity of Casanova's identification documents and denied her access to the funds in the Botton-Burla account, but that same day, Casanova enlisted Mendez to help her withdraw the balance of the account by purchasing a cashier's check for $439,706.19. Casanova deposited all the proceeds in her Interamerican Bank account and then distributed some of the proceeds to coconspirators through withdrawals that she

3

structured to evade reporting requirements.  Casanova also structured ten other withdrawals of funds from six coconspirators' bank accounts at five different banks, and she laundered over $50,000 in proceeds by purchasing a dump truck from Lucky Trucks that the company then purchased for a slightly reduced price from conspirator Alex Rodriguez.

The district court also did not clearly err when it enhanced Casanova's offense level for her unlawful use of a means of identification.  A district court may enhance by two levels the offense level of a defendant whose offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."  U.S.S.G. § 2B1.1(b)(10)(C)(i).  The commentary to section 2B1.1 provides that "'[m]eans of identification' has the meaning given that term in 18 U.S.C. 1028(d)(7), except that such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable . . . ."  Id. cmt. n.1.  And "the term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . government passport number."  18 U.S.C. § 1028(d)(7)(A).  During the sentencing hearing, Casanova admitted that she used a passport "belong[ing] to a Colombian male,"

4

and in her brief, Casanova concedes that she "used an altered Colombian passport previously used by an unknown male bearer."  In other words, Casanova admits that the passport was issued to a real person other than herself.  Casanova argues that the passport might have been issued to a codefendant, but that possibility is of no consequence because Casanova's sentence accounts for her admitted wrongdoing in using the passport.  See 18 U.S.C. § 1028(d)(7)(A).  Casanova admitted in her factual proffer that she conspired to embezzle the funds; she "opened the account [at Interamerica Bank] using . . . a forged Colombian passport" and "presented [that] false Colombia[n] identification document[] as proof of her identity" to withdraw the funds from the dormant accounts; she "distributed proceeds of the bank fraud" to coconspirators; and she "structured the withdrawal" of funds in coconspirators' bank accounts.

The district court did not err when it ordered Casanova to pay Wachovia $1,157,940.50 in restitution.  The Mandatory Victim Restitution Act provides that the district court shall order restitution to the victim of an offense where the defendant is convicted of an offense "in which an identifiable victim or victims has suffered a . . . pecuniary loss."  18 U.S.C. § 3663A(a)(1), (c)(1)(B).  Casanova did not object to the amount of loss attributed to Wachovia in the presentence investigation report, and "[i]t is the law of this circuit that a failure to object to

5

allegations of fact in a PSI admits those facts for sentencing purposes and precludes the argument that there was error in them." United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) (internal quotation marks omitted). Casanova argues that the government failed to establish a loss by Wachovia, but she admits in her factual proffer and on appeal that she withdrew the funds from dormant accounts held by Wachovia. Wachovia suffered a loss because it paid the funds in those dormant accounts to the wrong person.

The district court did not abuse its discretion when it sentenced Casanova to six concurrent terms of 88 months of imprisonment for her fraud, theft, and money laundering crimes to run concurrently with 19 terms of 16 months of imprisonment for her structuring crimes. We expect that a sentence within the advisory guideline range is reasonable. United States v. Lebowitz, 676 F.3d 1000, 1016 (11th Cir. 2012). Casanova's sentence is a month above the low end of her advisory guidelines range of 87 to 108 months of imprisonment and well below the maximum statutory terms for her crimes. See 18 U.S.C. §§ 371, 1344, 2113(b), 1956(a)(1); 31 U.S.C. § 5324(d)(2). The district court reasonably determined that a sentence within the guidelines range would best address Casanova's offense and her history and characteristics, provide adequate punishment, reflect the seriousness of her 25 offenses, promote respect for the law,

6

and deter her from future similar crimes.  18 U.S.C. § 3553(a).  Casanova argues that the district court failed to account for her physical ailments and age of 79 in weighing the sentencing factors and considering her request for a downward variance, but the district court reasonably rejected Casanova's request for a below-guidelines sentence based on findings that, "[a]t the time [Casanova] took each and every role in this case she was already in her 70s" and, "[d]espite advanced age and her alleged infirmities, [she] went through extraordinary measures to exercise this fraudulent scheme."  Casanova argues that she did "not [commit] an exceptionally serious bank crime," but her crimes involved what most persons would consider an exceptional amount of money stolen through means exceptional in scope and sophistry.  Casanova also argues about a disparity between her sentence and the 41-month sentence imposed on her grandson, but these coconspirators are not similarly situated.  United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009).  Casanova played a greater role in the fraud, and when her grandson notified her in 2007 that federal agents were investigating the fraud, Casanova fled to Peru, where she remained until April 2011.  Casanova's sentence is reasonable.

We **AFFIRM** Casanova's sentence.