[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11284

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARK HIMMELBERGER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cr-00141-RV-2

_____

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Mark Himmelberger appeals his convictions for conspiracy to distribute and possess with intent to distribute, and distribution of, fifty or more grams of methamphetamine. On appeal, Himmelberger argues that the district court abused its discretion when it declined to give his requested jury instruction relating to the amount of methamphetamine. After careful review, we affirm.

## I.    FACTUAL BACKGROUND

### A.  Indictment and Trial Evidence

An indictment charged Himmelberger with (1) conspiracy to distribute and possess with intent to distribute "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846; and (2) distribution of "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers," in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2.

At trial, DEA agent David Wilson testified that a cooperating source used $1,500 to purchase two bags of methamphetamine from Himmelberger at a controlled buy in a Cracker Barrel parking lot in Pensacola. Shortly afterward, another agent arrested Himmelberger. Wilson took the two bags to the DEA office and then sent them to the lab for testing.

Patricia Burn-Posada, a forensic chemist with the DEA, testified that she analyzed the contents of the bags seized from the Cracker Barrel drug exchange. Burn-Posada first took a portion of the substance from each of the bags and ran a series of tests. After concluding that the material inside the bags was methamphetamine and that the purity of the substance in each bag was almost equal, she combined the contents of the bags and calculated the net weight.

Burn-Posada then conducted a purity analysis, which concluded that the substance was d-methamphetamine hydrochloride, had a net weight of 123.8 grams, plus or minus 0.2 grams, and that 98%, plus or minus 6 percentage points, of the 123.8-gram sample was pure methamphetamine. Thus, the amount of pure methamphetamine in the sample was between 113.8 grams and 124 grams, which was more than twice the 50 grams that Himmelberger was charged with.[1] Burn-Posada stated that pure methamphetamine like that indicated in her tests is sometimes referred to as "ice."

On cross-examination, Burn-Posada explained that she concluded the two bags' purity was similar before combining

---

[1] In a report that chemist Burn-Posada prepared describing the results of her analysis, the amount of pure substance in the combined bags was 121.3 grams plus or minus 7.5 grams. Because the total net weight was 123.8 grams plus or minus .2 grams, the amount of pure substance is 113.8–124 grams. Himmelberger did not object to Burn-Posada's report being admitted into evidence.

them because a preliminary test yielded the salt form of methamphetamine, which would not happen unless the substance is almost in its pure form. Burn-Posada was confident that there was no cutting agent or adulterant in the methamphetamine.

## B. Jury Charge Conference

Himmelberger and the government proposed different versions of the verdict form relating to the quantity of methamphetamine. The government proposed that, for each count, the jury be given the option to determine whether the offense involved:

(1) "Fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers";

(2) "Five (5) grams or more, but less than fifty (50) grams, of methamphetamine, its salts, isomers, and salts of its isomers"; or

(3) "Less than five (5) grams of methamphetamine, its salts, isomers, and salts of its isomers."

The government's proposed jury charge tracked the relevant part of the § 841(b) penalty provisions for the charged §841(a) offenses here: distribution of methamphetamine, its salts, isomers, and salts of its isomers, and conspiracy to do the same, as set forth in the indictment.

Himmelberger proposed that, for each count, the jury instead be asked to determine whether the offense involved (1) methamphetamine, its salts, isomers, and salts of its isomers, or (2) a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, as follows:

(1) "Fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers *or* 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers";

(2) "Five (5) grams or more of methamphetamine, its salts, isomers, and salts of its isomers *or* 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers"; or

(3) "Less than five (5) grams of methamphetamine, its salts, isomers, and salts of its isomers *or* less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."[2] (Emphasis added).

---

[2] Himmelberger's proposed instructions used both "mixture and substance" and "mixture or substance." In this opinion, we will refer to all three instructions collectively as his proposed "mixture or substance" instructions,

At the charge conference, Himmelberger argued that his proposed jury instructions tracked the language in the charged penalty statute, 21 U.S.C. § 841(b)(1)(A)(viii), which refers both to (1) actual methamphetamine and (2) mixtures or substances containing a detectable amount of methamphetamine. Himmelberger argued that whether the methamphetamine he possessed was 50 grams of actual methamphetamine or 50 grams of a mixture or substance containing a detectable amount of methamphetamine could affect the statutory penalties and thus was an element of the offense that the jury needed to find beyond a reasonable doubt.

The district court responded that "the charge is methamphetamine[,] [t]he evidence is that it's ice," and Himmelberger was "not charged with a mixture." The district court stated that it was confusing to include the "mixture" language and that to do so would change the charged crimes. The district court declined to give Himmelberger's proposed jury instructions.

## C. Verdict and Sentence

After deliberation, the jury found Himmelberger guilty on both counts and found that his crimes both involved 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers. Himmelberger moved for a new trial, arguing that the

---

as the penalty statute lists this phrase in the disjunctive. *See* 21 U.S.C. § 841(b)(1)(A)(viii), (b)(1)(B)(viii).

failure to include the methamphetamine mixture language in the jury charge deprived him of a fair trial.  The district court denied his motion.

The district court sentenced Himmelberger to 120 months' imprisonment on each drug-conviction count, to be served concurrently.

Himmelberger timely appealed.

## II.    DISCUSSION

### A.  Applicable Law as to Jury Instructions

A district court's refusal to give a requested jury instruction is not grounds for reversal unless (1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense. *United States v. Lebowitz*, 676 F.3d 1000, 1014 (11th Cir. 2012).[3]  "[A] district court may refuse to give a confusing jury instruction, and the charge as a whole must accurately reflect the law in the context of a case's facts." *United States v. Mayweather*, 991 F.3d 1163, 1183 (11th Cir. 2021) (cleaned up).  A constitutional error in the district court's jury instructions is harmless if "it appears beyond a reasonable doubt

---

[3] This Court reviews *de novo* whether jury instructions are correct statements of law, but it reviews the district court's refusal to give a requested jury instruction only for abuse of discretion. *United States v. Mayweather*, 991 F.3d 1163, 1174 (11th Cir. 2021).

that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 1837 (1999) (quotation marks omitted).

Other than a prior conviction, any fact that increases the statutory minimum or maximum penalty of a crime is an element that must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000); *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 2155 (2013).

### B.  Statutory Penalties for Methamphetamine Offenses

Federal drug-trafficking offenses, including conspiracy and substantive distribution of a controlled substance, 21 U.S.C. §§ 841(a)(1), 846, are punished under the statutory penalty scheme in 21 U.S.C. § 841(b). *See* 21 U.S.C. §§ 841(b), 846.  For methamphetamine offenses, the statutory scheme is as follows:

(1) Ten years to life imprisonment for an offense involving "*50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers* or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers," *id.* § 841(b)(1)(A)(viii) (emphasis added);

(2) Five to forty years' imprisonment for an offense involving "*5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers* or 50 grams or more of a mixture or substance containing a detectable amount of

methamphetamine, its salts, isomers, or salts of its isomers," *id.* § 841(b)(1)(B)(viii) (emphasis added); and

(3) Up to 20 years' imprisonment for amounts smaller than those listed in subsection (b)(1)(B)(viii), *see id.* § 841(b)(1)(C).

Himmelberger's indictment charged that he conspired to distribute, conspired to possess with intent to distribute, and did distribute, 50 grams of methamphetamine, its salts, isomers, or salts of its isomers. The indictment did not charge that he conspired to distribute, conspired to possess with intent to distribute, or distributed, 500, 50, or less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine.

## C. Himmelberger's Proposed "Mixture or Substance" Jury Instructions

The district court did not abuse its discretion by declining to give Himmelberger's proposed "mixture or substance" jury instructions. While the language of his proposed instructions did track the statutory penalty scheme for methamphetamine-trafficking offenses, Himmelberger's instructions were not applicable to his charged offenses based on the trial evidence. *See Mayweather*, 991 F.3d at 1183. The indictment charged Himmelberger with offenses involving 50 grams or more of actual methamphetamine, and did not include any allegations about a mixture or substance containing a detectable amount of methamphetamine. And DEA chemist Burn-Posada testified that

the amount of actual methamphetamine in the bags that Himmelberger sold to the cooperating witness was more than twice the charged 50 grams. Thus, the district court did not abuse its discretion in declining to add the "mixture or substance" language to the jury instructions, as it was not applicable in the factual context of his charged crimes or the trial evidence and could have confused the jury. *See id.*

In addition, the district court's refusal to give Himmelberger's proposed jury instructions did not substantially impair his ability to present a defense, because he was able to argue that his offenses did not involve the charged 50 grams or more of actual methamphetamine. *See Lebowitz*, 676 F.3d at 1014. On cross-examination, Himmelberger questioned the reliability of DEA chemist Burn-Posada's forensic analysis, pointing out that the two bags of methamphetamine were commingled before she tested them and that she did not test the entire sample. The jury could have discredited Burn-Posada's testimony and found that the two bags contained less than 50 grams of actual methamphetamine. Of course, the jury did find that Himmelberger's crimes involved 50 grams of methamphetamine, but not because he was in any way prevented from defending against the crimes with which he was charged.

Himmelberger argues that, because an offense involving 50 grams of actual methamphetamine results in a ten-year mandatory minimum, 21 U.S.C. § 841(b)(1)(A)(viii), while an offense involving 50 grams of a mixture containing

methamphetamine results in a five-year mandatory minimum, *id.* § 841(b)(1)(B)(viii), whether the amount of methamphetamine was actual or part of a mixture is an element of the offense that must be submitted to the jury. *See Alleyne*, 570 U.S. at 103, 133 S. Ct. at 2155. But Himmelberger was not charged with offenses involving a 50-gram mixture containing a detectible amount of methamphetamine. He was charged with crimes involving 50 grams or more of actual methamphetamine. That 50-gram quantity of actual methamphetamine was an element of his crimes, *see id.*, and it was charged in his indictment and found beyond a reasonable doubt by the jury. Thus, Himmelberger was properly subjected to the mandatory minimum penalties in § 841(b)(1)(A)(viii), and no *Alleyne* error occurred.

Although we hold that the district court did not err under *Alleyne*, we conclude in the alternative that Himmelberger's alleged error was harmless beyond a reasonable doubt. *See Neder*, 527 U.S. at 15, 119 S. Ct. at 1837.

The jury heard testimony, and saw a report, from DEA chemist Burn-Posada showing that the methamphetamine seized from Himmelberger weighed at least 123.6 grams and was at least 92% pure, meaning his offense involved more than 113 grams of actual methamphetamine. Our Court has approved these types of calculations. The penalty statute does not require the amount of methamphetamine in the first category (non-mixture or substance) to be pure. *See United States v. Frazier*, 28 F.3d 99, 101 (11th Cir. 1994) (explaining that the amount of actual

methamphetamine can be determined "through multiplying the purity of the mixture by its weight").

In *Frazier*, the defendant was convicted of possession with intent to deliver methamphetamine and sentenced to the mandatory minimum penalty of 20 years' imprisonment in § 841(b)(1)(A)(viii), [4] based on the finding that his offense involved enough methamphetamine to satisfy the statute's first category (non-mixture or substance). *Id.* at 100. Frazier possessed 441 grams of a substance that was 37 percent methamphetamine, which calculated to 163 grams of methamphetamine contained within the mixture. *Id.* Frazier argued that § 841(b)(1)(A)(viii) did not apply because he possessed a mixture or substance whose total weight did not meet the statutory "mixture or substance" threshold—the second category in the penalty statute—for the highest mandatory minimum. *Id.* This Court held that, even though it was contained within a mixture, Frazier possessed enough actual methamphetamine—the first category in the penalty statute—to trigger the enhanced penalty. *Id.* at 101.

In short, (1) the trial evidence showed Himmelberger's offenses involved more than double the 50 grams of actual methamphetamine that the jury needed to find and there was no cutting agent or adulterant in it, and (2) Himmelberger presented

---

[4] Frazier was subject to a 20-year mandatory minimum, as opposed to the 10-year penalty at issue here, because he had a prior felony drug conviction. *Frazier*, 28 F.3d at 100; *see* 21 U.S.C. § 841(b)(1)(A)(viii) (1992).

no evidence contradicting the government's chemist expert. It "appears beyond a reasonable doubt" that the district court declining to include Himmelberger's proposed "mixture or substance" instructions "did not contribute to the verdict obtained." *Neder*, 527 U.S. at 15, 119 S. Ct. at 1837 (quotation marks omitted).

Accordingly, we affirm Himmelberger's convictions and sentences.

**AFFIRMED.**