**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carmen SANTIAGO, Sharon Corbett,**
**Charles Cloud,**
**Defendants–Appellants.**

No. 87–8410.

United States Court of Appeals,
Eleventh Circuit.

Feb. 25, 1988.

Smith, Gambrell & Russell, Edward H. Wasmuth, Jr., Atlanta, Ga., for Santiago.

Mary S. Donovan, Atlanta, Ga., for Corbett.

Bruce S. Harvey, Atlanta, Ga., for Cloud.

Janet F. King, Asst. U.S. Atty., Atlanta, Ga., for U.S.

Before HATCHETT and EDMONDSON, Circuit Judges, and LYNNE *, Senior District Judge.

HATCHETT, Circuit Judge:

The appellants, Charles Cloud, Carmen Santiago, and Sharon Corbett, appeal their convictions and sentences for conspiracy to import cocaine, importation of cocaine, conspiracy to possess with the intent to distribute cocaine, and possession with intent to distribute cocaine. 21 U.S.C.A. §§ 841(a), 846, 952(a), 960, 963. We affirm.

## FACTS

On October 17, 1986, agents of the Drug Enforcement Administration (DEA) received information from Earnest Wright that the appellant, Charles Cloud, would be arriving at Atlanta, Georgia's Hartsfield International Airport on Delta Flight 138 from Nassau, Bahamas. Wright informed the agents that Cloud would be attempting to smuggle cocaine into the United States, and that a black female accompanying Cloud would probably be actually carrying the cocaine. At approximately the same time, a United States Customs supervisor in Atlanta received information from the United States Customs Office in Nassau that two black females might be attempting to smuggle cocaine into the United States aboard Delta Flight 138. The tip from the Nassau Customs Office indicated that one female would be wearing a peach-colored top with flowered shorts, and the

---

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Ala-bama, sitting by designation.

other female would be wearing a pink jacket and a short pink skirt.

The United States Customs Service maintains a pre-clearance facility in Nassau. Agents at the Nassau facility have the same authority to search travelers as agents in the United States. Because the passengers had received pre-clearance from the United States Customs Service in Nassau, Delta Flight 138 from Nassau to Atlanta, Georgia, arrived at a domestic gate instead of an international gate. As the passengers deplaned at domestic gate A–2, Wright identified Cloud. Shortly after Cloud deplaned, Carmen Santiago, a Latin female, wearing a pink jacket and pink shirt, and Sharon Corbett, a black female, wearing a top with jeans, also deplaned. As Cloud walked hurriedly down the concourse weaving back-and-forth across the aisle, the two females followed him weaving in the same manner. On the escalator leading to the baggage claim, Cloud talked with Santiago and Corbett. Upon arrival at the baggage claim area, the three talked again. Cloud, Santiago, and Corbett were under constant surveillance from the time they deplaned.

Upon leaving the baggage claim area, a United States Customs investigator approached Cloud, and after confirming that Cloud was on Delta Flight 138, the investigator asked Cloud if he was traveling with anyone. Cloud responded negatively. When asked about the fact that he had been seen speaking to Santiago and Corbett, Cloud said he knew one of the females because she had worked for him. The investigator directed that Cloud be subjected to a secondary customs examination. No contraband was found in Cloud's possession.

After turning Cloud over to other agents, the investigator joined the agents who had been watching Santiago and Corbett. When Santiago and Corbett claimed their luggage, the investigator approached them and identified himself. At that time, Santiago was carrying a red purse and Corbett was carrying a brown, roll-type carry-on bag. In response to questioning, Santiago and Corbett responded that they were not traveling with anyone else. Santiago and Corbett were then subjected to a secondary customs search. As the result of this search, a customs inspector found a package of cocaine in the red purse which Santiago was carrying. In another room, custom officials searched the brown carry-on bag carried by Corbett. A pair of flowered shorts and a quantity of cocaine were found in the carry-on bag. Corbett stated that the bag was not hers, but that she had put things into the bag.

In October, 1986, a grand jury returned an indictment against Cloud, Santiago, and Corbett, charging each, in a four count indictment, with conspiracy to import cocaine, importation of cocaine, conspiracy to possess with the intent to distribute cocaine, and possession with the intent to distribute cocaine. (Title 21 U.S.C. §§ 841(a), 846, 952(a), 960, and 963.)

At trial, Wright testified that he was married to Cloud's daughter. Wright also stated that before October, 1986, Cloud told him about smuggling cocaine into the United States from the Bahamas by using females, one of whom was named Shay. At trial, Shay was identified as Corbett. Wright characterized Cloud's statements concerning smuggling cocaine as boasting. On a few occasions, Wright accompanied Cloud to deliver cocaine and obtained small quantities of cocaine from Cloud. During trial, both Wright and Cloud introduced evidence of hostile relations between them. Wright testified that Cloud fired a weapon at Wright's parents' home. Cloud presented evidence that Wright was a drug user and had threatened the Cloud family. Cloud also testified that Wright had tried to bribe him shortly before the trial.

After the jury convicted appellants on all counts, Wright recanted his testimony. On May 6, 1987, Cloud filed a motion for new trial which included the sworn affidavit of Wright stating that Wright falsely testified at trial. The next day, without a hearing, the district court denied the motion for a new trial. After the district court denied the motion, the government filed an untimely response accompanied by another affidavit from Wright which retracted the

previous recantation. Wright stated that the recantation of his original testimony was the result of threats from Cloud's family.

## ISSUES

The issues are whether the district court erred: (1) in denying the motions to suppress, (2) in admitting into evidence hearsay statements, and (3) in denying Cloud's motion for a new trial based on Wright's recanted testimony.

## DISCUSSION

### I.

Santiago and Corbett contend that the search in Atlanta was an extended border search because it was conducted beyond the functional equivalent of the border. According to their argument, the pre-clearance facility in Nassau was the border. If the Atlanta search was an extended border search, the officials needed a reasonable suspicion that Santiago and Corbett were engaged in illegal activities. Santiago and Corbett contend that the officials did not have a reasonable suspicion; therefore, the search was unconstitutional.

The government contends that the search in Atlanta was a secondary customs search; therefore, it required no reasonable suspicion of illegal activity. Alternatively, the government argues that if the Atlanta search was an extended border search, the facts raised a reasonable suspicion that Santiago and Corbett were involved in illegal activity.

■ Warrantless searches at international borders of the United States may be conducted without any suspicion of criminal activity. *United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977); *United States v. Haley*, 743 F.2d 862, 864 (11th Cir.1984); *United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983); *United States v. Garcia*, 672 F.2d 1349, 1353–54 (11th Cir.1982). A border search may be conducted at any place which constitutes

the functional equivalent of the border. *Garcia*, 672 F.2d at 1363. Within the class of border searches which are authorized without suspicion, 19 U.S.C.A. § 1467 authorizes the Customs Service to engage in secondary customs searches which may be conducted after an initial customs inspection. An extended border search, however, is a search that occurs beyond the functional equivalent of the border. An extended border search may not be conducted unless the officials have a reasonable suspicion of criminal activity. The critical distinction is that general border searches, including secondary customs searches, do not require any suspicion of illegal activity. In contrast, an extended border search requires a reasonable suspicion of illegal activities.

■ Three factors determine whether a search has occurred at the functional equivalent of the border: (1) reasonable certainty that the border was crossed, (2) lack of time or opportunity for the object to have changed materially since the time of crossing, and (3) performance of the search at the earliest practical point after the border is crossed. *United States v. Garcia*, 672 F.2d 1349, 1363–64 (11th Cir.1982).

■ The search in the Atlanta airport occurred at the functional equivalent of the border. It is certain that the border was crossed because the flight originated in the Bahamas and ended in the United States. Santiago and Corbett were under constant surveillance, leaving no opportunity for the objects of the search to have changed materially since the time of crossing. The agents conducted the search at the earliest practical point after the border was crossed and at the time when Santiago and Corbett came into possession of their luggage. The conclusion that the search in Atlanta occurred at the functional equivalent of the border is not altered by the presence of the pre-clearance facility in Nassau. Rather, the Atlanta search was conducted pursuant to 19 U.S.C. § 1467 which authorizes secondary searches in ports of the United States.** Additionally, 19 C.F.R. § 24.18(a)

---

** Title 19 U.S.C. § 1467 specifies:

Whenever a vessel from a foreign port or

defines pre-clearance of air travelers as "the tentative examination and inspection of air travelers and their baggage at foreign places where U.S. Customs personnel are stationed for that purpose." The characterization of a search at a pre-clearance facility as "tentative" implies that a secondary search upon arrival in the United States is authorized by law. Because secondary searches do not require any suspicion of illegal activities, the searches at the Atlanta airport were proper. Consequently, the district court correctly denied the motions to suppress. Our conclusion that the Atlanta search was not an extended border search precludes our examination into reasonableness of suspicion.

## II.

The second issue involves Wright's testimony that Cloud had stated that "he would pay this lady a thousand dollars to bring the cocaine here to Atlanta for him," that "they [the ladies] would carry it on their person," and that the ladies were named "Shay and Linda." Santiago and Corbett contend that Wright's testimony is hearsay. The government contends that Federal Rule of Evidence 801(d)(2)(E) provides an exception to the hearsay rule in this case because Cloud, a co-conspirator, made the statement in furtherance of the conspiracy.

■ The co-conspirator exception to the hearsay rule allows the admission into evidence of a declaration if the government can prove (1) the existence of a conspiracy, (2) the defendant and the declarant were both members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Alvarez*, 755 F.2d 830, 855 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985).

■ Santiago and Corbett argue that Cloud's statements do not satisfy the co-conspirator exception to the hearsay rule because the statements were not made in furtherance of the conspiracy. Santiago and Corbett point to Wright's testimony in which he characterized Cloud's statements as "bragging." They contend that such "bragging" statements are not in furtherance of a conspiracy. Contrary to these arguments, boasts and other conversations may be in furtherance of a conspiracy if such statements are used to obtain the confidence or to allay the suspicions of a co-conspirator. *United States v. Miller*, 664 F.2d 94, 98 (5th Cir. Unit B 1981), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982). Wright was not a co-conspirator at the time of trial, but he had assisted Cloud in the distribution of cocaine. The fact that Wright was not involved in the October 17, 1986, importation does not negate the fact that the statement furthered the conspiracy. This court applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy. *United States v. James*, 510 F.2d 546, 549 (5th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed. 2d 81 (1975). Applying this liberal standard, the district court's finding that Cloud's statement was within the co-conspirator exception to the hearsay rule is correct. Even if Cloud's statements were improperly admitted, their inadmission did not constitute reversible error in light of the abundance of evidence of a conspiracy between Santiago and Corbett as demonstrated by the activity at the Atlanta airport.

## III.

The third issue concerns Cloud's contention that the district court erred in denying

---

place or from a port or place in any territory or possession of the United States arrives at a port or a place in the United States or the Virgin Islands, the appropriate customs officer for such port or place of arrival may, under such regulations as the Secretary of the Treasury prescribe and for the purpose of assuring compliance with any law, regulation, or instruction which the Secretary of the

Treasury or the Customs Service is authorized to enforce, cause inspection, examination, and search to be made of the persons, baggage, and merchandise discharged or unladen from such vessel, *whether or not* any or all such persons, baggage, or merchandise *has previously been inspected, examined, or searched* by officers or the Customs. [Emphasis added.]

his motion for a new trial. Cloud argues that the recantation of Wright's testimony serves as newly discovered evidence. On May 4, 1987, Wright recanted his trial testimony. In an affidavit dated May 20, 1987, Wright retracted his May 4, 1987, recantation. Wright claimed that he would not have originally recanted his trial testimony except for threats from Cloud's family.

The four prerequisites necessary to prevail on a motion for new trial based on newly discovered evidence are: (1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an acquittal; and (4) the failure to learn of such evidence must be due to no lack of diligence on the part of the defendant. *United States v. Williams*, 816 F.2d 1527, 1530 (11th Cir. 1987); *Bentley v. United States*, 701 F.2d 897, 898 (11th Cir.1983); *United States v. Metz*, 652 F.2d 478, 479 (5th Cir.1981) (new trial based on new evidence granted only with great caution). Cloud argues that the first test is satisfied because a recantation is a new version of the facts; therefore, it constitutes newly discovered evidence. This argument is strained, however, due to the fact that Wright has since retracted his recantation. Wright's version of events remains exactly as it was at trial. Furthermore, recantations are viewed with extreme suspicion by the courts. *Newman v. United States*, 238 F.2d 861, 862 (5th Cir. 1956). The district court's ruling on a motion for new trial will not be reversed unless that ruling is so clearly erroneous as to constitute an abuse of discretion. *United States v. Williams*, 816 F.2d at 1530; *United States v. Metz*, 652 F.2d at 479. The district court's denial of a new trial was not an abuse of discretion.

Cloud's remaining contentions are that the district court erred in admitting irrelevant and prejudicial evidence, that a prejudicial variance between the evidence and the indictment denied Cloud due process, and that the evidence was insufficient to establish Cloud's participation in the conspiracy. All of these claims are meritless and do not warrant discussion.

Accordingly, the judgments are affirmed.

AFFIRMED.