[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12108
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-20282-BB-3

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

versus

CESAR DANIEL RAMIREZ,

Defendant -Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 22, 2016)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Cesar Daniel Ramirez appeals his convictions and sentences for conspiracy to possess Oxycodone with intent to distribute, in violation of 21 U.S.C. § 846, and attempt to possess Oxycodone with intent to distribute, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.  Mr. Ramirez argues that the district court abused its discretion by admitting unauthenticated photographs of text messages that he had sent to a co-conspirator.  He also argues that the district court erred by allowing a third-party witness to testify about a conversation she had with Mr. Ramirez's co-conspirator.  That testimony, according to Mr. Ramirez, was both hearsay and in violation of his rights under the Confrontation Clause of the Sixth Amendment. Finally, he argues that his sentence was substantively unreasonable. After review of the parties' briefs, we affirm.

## I

We assume the parties are familiar with the background of this case.  Thus, we summarize the proceedings and facts only insofar as necessary to provide context for our decision.

Between May and August of 2013, Deivi Mora was the leader of an Oxycodone and heroin trafficking conspiracy.  Mr. Ramirez and his father, Dr. Ramirez-Hermoso, also participated in the drug trafficking business.  In August of 2013, Mr. Mora was forced to leave his position as the leader of the trafficking organization because he was arrested on unrelated charges.  When Mr. Mora was

arrested, his fiancée Diana Linares, filled Mr. Mora's leadership role in the conspiracy. From August of 2013 to November of 2013, Ms. Linares met with Dr. Ramirez-Hermoso several times to purchase blank prescriptions of Roxicodone. Ms. Linares gave the blank prescriptions to Yamil Salas, who would recruit people to fill the prescriptions and then send Ms. Linares information about the recruited individuals via text message. Once Ms. Linares received the information, she would text Mr. Ramirez so that he could verify the prescription information when the pharmacy called his father's medical office.

In September of 2013, Mr. Mora called Special Agent Nick Aeschliman of the Drug Enforcement Administration. Agent Aeschliman went to the Broward County Jail to interview Mr. Mora about the trafficking conspiracy. During the interview, Mr. Mora told Agent Aeschliman about how the conspiracy worked, and Agent Aeschliman suggested that Ms. Linares begin working with the DEA as a third-party cooperator on Mr. Mora's behalf.

In November of 2013, Ms. Linares began working as a third-party cooperator with the DEA. While under DEA surveillance, Ms. Linares purchased five fraudulent Oxycodone prescriptions from Dr. Ramirez-Hermoso and distributed the prescriptions to third-parties. Ms. Linares also began sending photographs of her text message conversations with Mr. Ramirez to Agent Aeschliman. Mr. Ramirez moved *in limine* to exclude the government's proposed

photographs. The motion was denied. At trial, Mr. Ramirez renewed his objection to the admittance of the photographs.

Mr. Ramirez also objected to the testimony of Ms. Linares recounting a visit she and Mr. Mora made to Dr. Ramirez-Hermoso's medical office in order to see Mr. Ramirez. At this time, she was not involved in the drug scheme. She waited in the car while Mr. Ramirez and Mr. Mora met. Ms. Linares testified to a statement Mr. Mora made to her when he returned to the car, in which he told her how the drug trafficking conspiracy operated.

## II

We review the district court's evidentiary ruling, including the admission of witness testimony, for an abuse of discretion. *See United States v. Moran*, 778 F.3d 942, 958–59 (11th Cir. 2015).

## A

On appeal, Mr. Ramirez argues that the district court erred by admitting the photographs of the text messages. He argues that the photographs were not properly authenticated. He notes that the government did not conduct any forensic tests on Ms. Linares's cell phones.

Under Rule 901(a) of the Federal Rules of Evidence, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present "sufficient evidence to make out a *prima facie* case that the proffered

4

evidence is what it purports to be." *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012). After meeting the *prima facie* burden, the evidence may be admitted, and the ultimate question of authenticity is then decided by the jury. *See id.* A district court has discretion to determine authenticity and that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it. *See id.* Evidence may be authenticated through the testimony of a witness with knowledge. *See id.* We give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony. *See id.*

The district court did not abuse its discretion by admitting the photographs of the text messages between Mr. Ramirez and Ms. Linares. Ms. Linares testified at trial that the photographs of the text messages were pictures from her phone. She explained that the images were text messages between her and Mr. Ramirez. Agent Aeschliman testified that he was present for some of the text messages between Ms. Linares and Mr. Ramirez and that the photographs were screenshots of the text messages that Ms. Linares had captured and sent to him, which fairly and accurately represented the text messages. Agent Aeschliman further testified that the subscriber information listed Mr. Ramirez as the user of the phone number. Because competent evidence supported the district court's conclusion, it did not abuse its discretion. *See Lebowitz*, 676 F.3d at 1009. Although Mr. Ramirez

5

argues that Ms. Linares and Agent Aeschliman were not credible, we give particular deference to the district court's determination of credibility. Mr. Ramirez has not demonstrated why we should not do so here. *See id.*

## B

On appeal, Mr. Ramirez argues that the best evidence rule weighed in favor of exclusion of the photographs of the text messages because of the questionable authenticity of the photographs.

The best evidence rule provides that the original documents must be produced to prove the content of any writing, recording, or photograph. *See United States v. Flanders*, 752 F.3d 1317, 1336 (11th Cir. 2014). An original is not required if it is lost or destroyed, unless it is unavailable through bad faith. *See* Fed. R. Evid. 1004. A duplicate is admissible to the same extent as an original, unless there is a genuine question of authenticity or it would be unfair to admit the duplicate. *See* Fed. R. Evid. 1003.

The admission of the photographed text messages did not violate the best evidence rule. The government explained that, while the investigation was continuing, the original phone had dropped in water and was rendered inoperable. There was no evidence of bad faith and the photographs' authenticity was supported by the testimony of Ms. Linares and Agent Aeschliman. *See Flanders*, 752 F.3d at 1336.

**C**

On appeal, Mr. Ramirez contends that the rule of completeness weighed in favor of the photographs' exclusion because he was without the ability to provide any context that would serve to rebut the government's evidence.

The rule of completeness provides that when "a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. The rule of completeness does not automatically make the entire document admissible. *See United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011). Rather, "the rule permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." *Id.*

The district court's admission of photographs of the text messages did not violate the rule of completeness. First, the district court made clear that Mr. Ramirez was permitted to introduce material to "give the conversation context" and Mr. Ramirez did not do so. *See* D.E. 165 at 4. Second, Mr. Ramirez has failed to demonstrate how additional material would "qualify, explain, or place into context" the text messages that were admitted. *See Lanzon*, 639 F.3d at 1302.

**D**

7

On appeal, Mr. Ramirez argues that the district court erred by admitting Ms. Linares's testimony regarding the subject of the meeting between Mr. Ramirez and Ms. Mora. He contends that allowing the testimony violated the Confrontation Clause of the Sixth Amendment.

Generally, hearsay evidence is inadmissible. *See* Fed. R. Evid. 802. But an out-of-court statement offered against an opposing party is not hearsay if it "was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). As a prerequisite to the admission of a co-conspirator's statement, the government, as the proponent, "must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy." *United States v. Underwood*, 446 F.3d 1340, 1345–46 (11th Cir. 2006). The court applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy. *See United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988). Hearsay errors are harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, or had only a slight effect. *See United States v. Carter*, 776 F.3d 1309, 1328 (11th Cir. 2015).

8

The Confrontation Clause provides that, "[i]n all criminal cases, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause protects a defendant's right to confront those individuals who make "testimonial" statements against him unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 53–54, 68. (2004). Testimony is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51. This means that testimonial statements are statements that declarants would reasonably expect to be used prosecutorially, including *ex parte* in-court testimony or its functional equivalent, such as affidavits. *See id.* The admission of statements made by co-conspirators in furtherance of a conspiracy, however, does not violate a defendant's constitutional right to confrontation because such statements are not testimonial in nature. *See id.* at 55.

A reasonable jury could have found that the statements Mr. Mora made to Ms. Linares were statements made by a co-conspirator during and in furtherance of a conspiracy. This is because Ms. Linares did, in fact, take over the Oxycodone trafficking operation when Mr. Mora was incarcerated and before she became a third-party cooperator. Therefore, the district court did not abuse its discretion. If there is an abundance of evidence, even if hearsay statements were improperly

9

admitted, their admission does not constitute reversible. *See Santiago*, 837 F.2d at 1549.

Additionally, Ms. Linares' testimony regarding Mr. Mora's statements did not violate the Confrontation Clause.  Mr. Mora's statements to Ms. Linares—the conversation in which Mr. Mora described a meeting he had with Mr. Ramirez and the details of the ongoing conspiracy—occurred prior to either Mr. Mora's or Ms. Linares' involvement with law enforcement.  There is no evidence that Mr. Mora would have reasonably expected that his statements to Ms. Linares, his fianceé, would be used prosecutorially.  The statements plainly were not made with the primary purpose of aiding in a criminal investigation, as they were from a private conversation the co-conspirator had with his fianceé outside the trial context.  *See Crawford*, 541 U.S. at 51.

## III

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard.  *See Gall v. United States*, 552 U.S. 38, 41 (2007).  The party who challenges the sentence bears the burden to show that the sentence is unreasonable in light of the record and the § 3553(a) factors.  *See United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies

outside the range of reasonable sentences dictated by the facts of the case." *See United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*).

We examine whether a sentence is substantively reasonable in light of the totality of the circumstances. *See Gall*, 552 U.S. at 51. The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). The court must also consider the need to avoid unwarranted sentencing disparities. *See id.* § 3553(a)(6). The fact that a sentence is within the advisory guideline range and well below the statutory maximum are both factors indicative of reasonableness. *See United States v. Cubero*, 754 F.3d 888, 898 (11th Cir. 2014).

The sentencing court need not weigh each factor equally, but instead may give greater weight to one factor over the other. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). The decision about how much weight to assign a particular factor is left to the discretion of the district court. *See id.* Absent clear error, we will not reweigh the § 3553(a) factors. *See United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009). A district court should not focus on one factor "single-mindedly" to the detriment of other factors, and a

11

court's unjustified reliance on any one § 3553(a) factor may be a symptom of an unreasonable sentence. *See United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006). A district court can abuse its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *See Irey*, 612 F.3d at 1189.

Mr. Ramirez's sentences were not substantively unreasonable. There was substantial evidence of Mr. Ramirez's participation in the conspiracy, including Ms. Linares's testimony and the text messages between Ms. Linares and Mr. Ramirez. Although Mr. Ramirez's involvement was minimal, there is testimony that he participated continuously in the scheme from August of 2012 until November of 2013. Furthermore, given that the district court held Mr. Ramirez responsible for only five prescriptions—not for all the other transactions outside the indictment—the sentence is reasonable.

## IV

The district court did not abuse its discretion by admitting the screenshots of the text message conversations nor by admitting the third-party cooperator's testimony regarding her conversation with a co-conspirator. And Mr. Ramirez's sentences were not substantively unreasonable because there was substantial evidence of his continuous participation in the conspiracy.

12

We affirm Mr. Ramirez's conviction and sentence.

**AFFIRMED.**