**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5529-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DEREK MACK, a/k/a
DERRICK MACK, and
DERICK MACK,

      Defendant-Appellant.

_____

        Argued December 9, 2019 – Decided February 12, 2020

        Before Judges Messano and Susswein.

        On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 92-04-0819.

        Alan Dexter Bowman argued the cause for appellant.

        Natalie A. Schmid Drummond, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Natalie A. Schmid Drummond, of counsel and on the brief).

PER CURIAM

Defendant, Derek Mack, appeals from the denial of his motion for a new trial based on newly discovered evidence. In 1994, defendant was tried and convicted of a triple homicide. He now contends he has evidence that a county prosecutor's office, in the mid-1990s, recruited inmates to commit perjury by fabricating jailhouse admissions of other criminal defendants. Defendant claims the prosecutor's office solicited and presented this form of perjury in his death penalty prosecution.

The trial judge conducted an evidentiary hearing, reviewed the newly discovered evidence, and found defendant's claims to be implausible. The judge determined that the recantation evidence was probably not true, and he concluded that this new evidence would probably not change the murder verdicts in a new trial. On that basis, the court denied defendant's motion for a new trial. After considering the record in light of the applicable legal standards, including the standard of review and deference we owe to a trial court's fact finding and credibility assessments, we affirm.

I.

Defendant faced the death penalty for the murders of Orlando Torres, Jose Ruiz, and Carmen Ruiz. The case involved a murder-for-hire plot. The circumstances surrounding these crimes were thoroughly recounted in our

A-5529-17T3

opinion deciding defendant's initial appeal and need not be repeated here.  State v. Mack, No. A-6842-94 (App. Div. Aug. 2, 1999).

Defendant's first capital trial ended in a mistrial when the jury could not reach a unanimous verdict.  A second death penalty trial was held in September 1994.  At that trial, the State presented a witness, William Thompson, who testified that while he and defendant were incarcerated at the county jail, defendant admitted to Thompson that he had entered into a contract to kill Torres and Jose Ruiz over a drug-related dispute.

Defendant was found guilty on three counts of first-degree murder, three counts of possession of a weapon for an unlawful purpose, and one count of unlawful possession of a weapon.  At the penalty phase, the jury did not impose the death penalty.  Defendant was sentenced to three consecutive life terms, each with a 30-year term of parole ineligibility.  The trial court imposed additional prison sentences for the weapons convictions.

On direct appeal, we affirmed the convictions but remanded for resentencing because the trial court improperly imposed multiple extended term sentences.  The Supreme Court denied defendant's petition for certification. State v. Mack, 163 N.J. 13 (2000).

Thereafter, defendant sought post-conviction relief (PCR). After we ordered a remand to conduct an evidential hearing, defendant's PCR petition was ultimately denied. We affirmed the denial, and the Supreme Court denied certification. State v. Mack, No. A-3697-09, (App. Div. Mar. 20, 2012); State v. Mack, 212 N.J. 199 (2012). Defendant then filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. In 2016, the United States District Court of New Jersey dismissed the petition, and defendant's ensuing application for a certificate of appealability was denied by the Third Circuit Court of Appeals.

Defendant subsequently filed a motion for a new trial based on newly discovered evidence. After conducting a hearing, the trial court issued a written opinion and order denying defendant's motion. Defendant now appeals from that order.

## II.

Defendant presents the following contention for our consideration:

> THE COURT ERRED IN THE [SIC] DENYING APPELLANT'S MOTION FOR A NEW TRIAL.

## III.

We begin our analysis by acknowledging the legal principles governing this appeal. We apply a three-prong test to determine whether a party is entitled to a new trial on the ground of newly discovered evidence. State v. Carter

4

(Carter II), 85 N.J. 300, 314 (1981) (citing State v. Artis, 36 N.J. 538, 541 (1962)).  A new trial is warranted "only if the evidence is (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."  State v. Bey, 161 N.J. 233, 287 (1999) (citing Carter II, 85 N.J. at 314).  As the Supreme Court reiterated in State v. Ways, "[w]e have held that all three prongs of that test must be satisfied before a defendant will gain the relief of a new trial."  180 N.J. 171, 187 (2004) (citing Carter II, 85 N.J. at 314).

In Ways, the Court explained that "[a] jury verdict rendered after a fair trial should not be disturbed except for the clearest of reasons."  Ibid.  "Newly discovered evidence," the Court cautioned, "must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial."  Id. at 187–88; see also State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (stating that motions for a new trial based on newly discovered evidence are typically "not favored and should be granted with caution by a trial court since it disrupts the judicial process" (citing State v. Haines, 20 N.J. 438, 443 (1956))).

5

The need for circumspection is especially pronounced when, as in this case, the newly discovered evidence is in the form of a recantation of trial testimony. Furthermore,

> The test for the judge in evaluating a recantation upon a motion for a new trial is whether it casts serious doubt upon the truth of the testimony given at trial and whether, if believable, the factual recital of the recantation so seriously impugns the entire trial evidence as to give rise to the conclusion that there resulted a possible miscarriage of justice. His [or her] first duty is, therefore, to determine whether the recanting statement is believable.
>
> [State v. Puchalski, 45 N.J. 97, 107–08 (1965).]

"Courts generally regard recantation testimony as suspect and untrustworthy." State v. Carter (Carter I), 69 N.J. 420, 427 (1976) (citation omitted). Thus, "the sincerity of a recantation is to be viewed with 'extreme suspicion.'" State v. Hogan, 144 N.J. 216, 239 (1996) (quoting United States v. Santiago, 837 F.2d 1545, 1550 (11th Cir. 1988)). Given the unreliability of recantation testimony, the burden of proof rests on the party "presenting such testimony to establish that [the recantation] is probably true and the trial testimony [is] probably false." State v. Feaster, 184 N.J. 235, 264 n.14 (2005) (quoting Carter I, 69 N.J. at 427).

Furthermore, "[a] motion for a new trial is addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal

6

unless there has been a clear abuse of that discretion." Puchalski, 45 at 107 (quoting Artis, 36 N.J. at 541). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

We defer to a trial court's fact-finding, moreover, even where it does not depend on assessing live witnesses' demeanor. The trial court's factual findings therefore remain entitled to deference even though the record before the court in this case consisted solely of documentary evidence. An appellate court is simply not as experienced nor as capable as the trial court at making credibility assessments or factual findings. State v. S.S., 229 N.J. 360, 379–81 (2017). Thus, we should not disturb a trial court's factual findings made from a documentary record if those findings are supported by "sufficient credible evidence." Id. at 381 (citing State v. Gamble, 218 N.J. 412, 424 (2014)).

IV.

We next summarize the specific newly discovered evidence that defendant contends warrants reversal of his murder convictions and a new trial. Defendant presented two forms of newly discovered evidence: (1) the purported

recantation of William Thompson, who had testified against defendant at his second death penalty trial, and (2) the testimony of Ronnie Morton, which defendant claims bolsters Thompson's recantation. We address each in turn.

A. William Thompson's Unsworn Recantation Statement

Thompson passed away prior to the hearing on the motion for a new trial.[1] Accordingly, the newly discovered evidence was presented in the form of an unsworn "affidavit." In full, the statement reads:

> I, William Thompson, state that to the best of my knowledge and belief the following to be true and accurate that:
>
> 1) I am in the presence of Kevin Murphy, an investigator who is working on behalf of Derrick Mack.
>
> 2) I provided statements and testified in the prosecution of Derrick Mack. It is my desire to fix this harm, which I caused due to false testimony and claims.
>
> 3) I lied concerning certain statements, which I claimed that Derrick Mack made to me. Specifically, I did not discuss Derrick Mack's case with him as I claimed. Further, I lied by stating that he disclosed details of the offenses to me and admitted guilty [sic] to me. My

---

[1] The trial court and both parties were aware of Thompson's deteriorating health at the end of 2017. The court had encouraged defense counsel to consider Thompson's health and to contact the court to conduct an evidentiary hearing to preserve the record before Thompson passed away. The court noted in its written opinion that defendant made no attempt to preserve Thompson's testimony on an emergent basis, such as by means of a de bene esse deposition.

reason was to lessen my punishments for the crimes I committed.

4) The facts stated in this affidavit are true.

Thompson's signature appears on the document alongside another signature presumed to be that of Kevin Murphy, the private investigator working for defendant. The form contains an area meant for the "Acknowledgement of Notary." That space was left blank. Nor did the document include a certification in lieu of oath pursuant to Rule 1:4-4(b).[2]

In evaluating the credibility and potential impact of Thompson's written statement, the trial court first considered whether it would be admissible at trial. The trial court was not persuaded by defendant's argument that the hearsay document qualified as a statement against interest admissible pursuant to

---

[2] Rule 1:4-4(b) provides:

> In lieu of the affidavit, oath, or verification required by these rules, the affiant may submit the following certification, which shall be dated and immediately precede the affiant's signature: "I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."

In this instance, although Thompson's statement claims the information is true, it does not include an acknowledgment that willfully false statements are subject to punishment.

N.J.R.E. 803(c)(25). But even assuming that the hearsay statement would be admissible at trial, the court concluded that defendant failed to meet his burden of establishing that Thompson's recantation was probably true. See Carter I, 69 N.J. at 427 ("[T]he burden of proof rests on those presenting such testimony to establish that it is probably true and the trial testimony probably false." (citing State v. Baldwin, 47 N.J. 379, 400 (1966))). Aside from the judicial skepticism of recantation evidence generally, the trial court reasoned that the fact the document was not notarized rendered it inherently unpersuasive, especially considering that Murphy, the private investigator who interviewed Thompson, was not called as witness to explain how the statement was prepared.[3]

## B. Ronnie Morton's Testimony

Ronnie Morton did testify at the hearing. He claimed that Thompson approached him in 1992 while the two of them were incarcerated to discuss a way for Morton to avoid a prison sentence. Morton testified that Thompson went around to different housing units in the jail to recruit inmates to fabricate incriminating testimony in high-profile cases. Morton testified that Thompson

---

[3] The trial court in its written opinion made clear that it had not precluded defendant from calling Murphy as a witness. The court further noted, "[i]ndeed, it could be argued that the State is entitled to an adverse inference that had the investigator appeared and gave testimony, that testimony would have been detrimental to defendant's interest," citing State v. Clawans, 38 N.J. 162 (1962).

attempted to convince him to offer false testimony against defendant in exchange for probation on his pending charges.

Morton further claimed he was taken to the jail's lawyer-client interview room after his conversation with Thompson. There, he was interviewed by two detectives who took him to the prosecutor's office. They asked him to testify that defendant admitted that he entered into a murder-for-hire contract and killed the victims. Morton testified that he eventually declined the detectives' solicitation to commit perjury and kept silent about it for twenty-four years until he happened to meet defendant in prison in 2016.

The trial court found Morton's testimony to be "highly suspect." The court added that Morton's claim that Thompson "was some sort of perjury recruiter in [sic] behalf of the Prosecutor's Office for high-profile cases strains credulity." The trial court also noted, "[t]he fact that Morton and Thompson would keep quiet about this alleged egregious conduct on the part of law enforcement for twenty-five years compounds the inherent unreasonableness of these claims."

V.

We next review the trial court's application of the factual circumstances of this case to the Carter II three-prong test. The trial court found that defendant had established the first prong, i.e., that the new evidence was material to the

issue and not merely cumulative or impeaching or contradictory. The trial court also found that defendant had established the second prong, concluding that the new evidence had been discovered since the trial and was not discoverable by reasonable diligence beforehand. The State has not cross-appealed those determinations, and we have no reason to overturn them.

As we have noted, "all three prongs of that test must be satisfied before a defendant will gain the relief of a new trial." Ways, 180 N.J. at 187. Thus, the newly discovered evidence must be "of the sort that would probably change the jury's verdict if a new trial were granted." Carter II, 85 N.J. at 314. In this instance, the trial judge concluded that defendant had not demonstrated that the jury would reach a different result if a new trial were granted.

In reaching the conclusion that the recantation evidence was not credible, the court not only considered the evidence defendant presented but also evidence defendant failed to present to support his allegations. Specifically, the court highlighted that defendant made no attempt to locate and subpoena the detective Morton specifically identified by name as one of the two detectives who solicited him to testify falsely against defendant. Nor has defendant made any effort to identify the second detective present at the alleged meeting where the solicitation of perjury occurred, even though Morton provided a physical

description of that detective. This circumstance bolsters the inherent unreliability of the recantation testimony. See Clawans, 38 N.J. at 170 (permitting a jury to draw an adverse inference against an opposing party when the party's failure to present evidence "raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him [or her]").

The trial judge also relied on strong evidence of defendant's guilt. The State had presented four eyewitnesses who identified defendant, and defendant's challenge to the photo array and in-court identification was rejected in our opinion affirming his convictions on direct appeal. The trial court further noted that the State's evidence showed that defendant fled New Jersey after he learned that police were looking for him, and then made incriminating statements about the homicides while being transported back to New Jersey. We affirmed the admissibility of those incriminating statements in defendant's first appeal.

Furthermore, the trial court carefully considered defendant's argument that Thompson's testimony, presented only at defendant's second trial, was a crucial difference that resulted in the jury's guilty verdict. Defendant had presented third-party guilt evidence in his first trial that resulted in a hung jury. The court noted that defendant failed to present evidence of third-party guilt in the second trial. The trial judge rejected defendant's argument that the trial

A-5529-17T3

outcomes were different because Thompson testified in the second trial that resulted in conviction, but not the first trial that ended with a hung jury.

We defer to the trial court's adverse credibility findings with respect to both Thompson's unsworn statement and Morton's live testimony. See Ways, 180 N.J. at 196–97 noting that deference to a judge's credibility findings in the context of recantation testimony is "particularly warranted." (citing Carter I, 69 N.J. at 427)); S.S., 229 N.J. at 379–81 (deferring to a trial judge's fact-finding even when it is based solely on documentary evidence). We therefore accept the trial court's finding that defendant failed to establish that the recantation testimony was probably true, and we also accept the trial court's conclusion that defendant has not established the third prong of the Carter II three-part test.

As we have noted, "[a] motion for a new trial is addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion." Puchalski, 45 N.J. at 107 (quoting Artis, 36 N.J. at 541). In this instance, the trial court thoroughly and cogently explained the reasons for its decision. We therefore have no basis upon which to conclude that the trial court abused its discretion in denying defendant's motion for a new trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5529-17T3