[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12573

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

COLUM PATRICK MORAN, JR.,
a.k.a. Emily lover,
a.k.a. emilylover@aol.com,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cr-00040-MMH-JBT-1

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

NEWSOM, Circuit Judge:

Colum Moran, a collector of child pornography, commented on several "mom blog" posts asking mothers to display sexually explicit images of their young daughters. We must decide whether Moran's requests constitute criminal attempts to produce child pornography under 18 U.S.C. § 2251(a) and (e).

Moran contends, in essence, that his requests—posted on otherwise-wholesome mom-blog sites—were so unlikely to succeed that they can't support attempt liability. In particular, he makes three related arguments. First, he asserts that the unlikelihood of success negates his intent to complete the production crime. Second, he says that because he couldn't have known—or even thought—that his plot would succeed, it can't be shown that he "kn[ew] or ha[d] reason to know that such visual depiction w[ould] be transported or transmitted using any means or facility of interstate or foreign commerce," as the production statute requires. Finally, he argues that his verbal requests were too insignificant to constitute the "substantial step" necessary to prove attempt.

We reject all three of Moran's contentions. First, the sheer unlikelihood that Moran's requests to the mom-bloggers would result in the production of child pornography does not negate his desire—and thus his intent—to produce child pornography, and there

is in any event plenty of evidence, even beyond the messages themselves, that he intended to do so.  Second, contrary to Moran's suggestion, § 2251(a)'s interstate-nexus element does not require that a defendant know ex ante that his plot will succeed—only (as relevant here) that *if* it succeeds, the forbidden images will travel in interstate commerce.  Finally, Moran's substantial-step argument, which he failed to clearly present to the district court, fails under plain-error review.

## I

"Mom blogs" are websites on which mothers—and likely some fathers—share parenting stories and tips.  They are chock-full of family-oriented and family-friendly content.  One illustrative site, "Your Modern Family," is authored and maintained by a mother and retired teacher and includes sections about kids' activities, parenting tips, and marriage and home-management advice.[1] Posts range from ideas for playing with sidewalk chalk to spring-cleaning suggestions—the latter sponsored by a soap company—to tips for the kids' first day of school.[2]  The point—Moran's point—is that mom-bloggers aren't likely to post child pornography on their sites.

---

[1] To be clear, "Your Modern Family" isn't one of the sites that Moran targeted. To protect the identities of the children at issue in this case, we won't identify the names of those sites here.

[2] *See* https://www.yourmodernfamily.com (last visited Nov. 4, 2022).

When Moran left a disturbing comment on one such blog, authorities launched an investigation. Moran had complimented a mom-blogger's young daughter's swimsuit and graphically described how he liked to perform a particular sex act with "pretty" "little girl[s]" in swimsuits like hers. Unbeknownst to Moran, that blogger's husband (and the little girl's father) was an FBI agent.

The investigation that ensued revealed that Moran, using the handle "Emily lover" at Emilylover@aol.com, had on three occasions asked other mom-bloggers to post pornographic pictures of their children. Warning: Moran's messages are vile. But to fairly assess one of his main arguments—namely, that the messages, while harassing, weren't *really* attempts to produce child pornography—we must analyze his comments in some detail.

Moran's first request responded to a mother's blog post about her five-year-old daughter learning to take photographs. Moran sent a comment asking the mother to have the girl—whom we'll just call "*A*"—take pornographic pictures of herself:

> She did a great job with these! The next time [*A*] wants to take pictures, you should suggest something fun. Have [*A*] take all her clothes off and take pictures of herself in the mirror. Especially when she's sitting in front of the mirror with her legs spread wide open so we can see her vagina. Maybe she could try spreading her vagina lips apart with her fingers so she can get a good picture of her little pink hole. My niece loves to have her picture taken while she uses the head of her toothbrush inside her vagina. If [*A*] wants

21-12573                Opinion of the Court                5

> to try it, my niece likes to lick the white cream from the brush when she's done. [A] would look so cute with her tasty girl goo smeared all over her smiling mouth 😊

Doc. 128-2.

Not quite a year later, Moran sent a second request to the same blogger, also about *A*. This time, Moran responded to a post about the now-six-year-old's morning routine:

> Great post! But the pictures I would most like to see are missing. [T]hose would be the ones of [A] doing her "morning stuff". In particular, some pictures of her on the toilet would be awesome. I'd like to see her panties around her ankles, with her legs spread wide enough to see the pee dribbling from between her vagina lips. I'd also like a couple of them to show her beautiful smiling face, and a couple of good closeups of her vagina 😊

Doc. 128-4. Moran later suggested that *A*'s mother buy her a sex toy for her 7th birthday—and even provided a link to facilitate the purchase.

Moran sent his third request to a different blogger, a mother who had recently advertised flushable baby wipes on Instagram. In a comment on one of the mother's blog posts, Moran referenced the Instagram ad and the mother's twin three-year-old daughters, whom we'll call "*B*" and "*C*":

I'm really interested in the flushable wipes you were talking about on IG [Instagram]! Can you please post some pictures or a video of [B] and [C] using them? I'm curious to see how easily their little fingers can navigate their crotches with them and how well they clean the girl's vaginas.  Thanks 😊

Doc. 128-7.

Federal law-enforcement officers traced the IP address from which Moran had sent all three messages to his residence.  When officers searched Moran's apartment, they seized his laptop and cell phone, which together contained more than 1,000 images of child pornography—many of toddlers.  Forensic computer evidence demonstrated that Moran had specifically searched for pornography involving seven- and eight-year-olds.  It also revealed since-deleted file folders called "Babies" and "Potty time," as well as files with names like "Toilet_Girls" and "8yo school girl."  Separately, investigators found 24 pairs of children's underwear in Moran's house—even though no children lived there.  When officers interviewed Moran during the search, he denied ever posting messages as "Emily lover."

The government charged Moran with one count of possession of child pornography, *see* 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and three counts of attempted production of child pornography, *see id.* § 2251(a) and (e).  The jury convicted Moran on all four counts, and the judge sentenced Moran to 64 years' imprisonment.

## II

Moran now appeals the attempted-production convictions. In relevant part, the production statute makes it unlawful for any person to:

> employ[], use[], persuade[], induce[], entice[], or co-erce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce.

*Id.* § 2251(a). Subsection (e) of the same statute provides for the punishment of "[a]ny individual who . . . attempts . . . to violate" § 2251(a). Moran challenges his attempted-production convictions on three related grounds, which we will consider in turn.[3]

## A

Moran first contends that the government can't prove a necessary element of its case—namely, that he had "the specific intent or mens rea to commit the underlying charged crimes." *United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007). Here, therefore,

---

[3] It is undisputed here that a defendant can violate § 2251(a) and (e) even without communicating directly with a minor. *See United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010) (holding that those provisions apply to individuals who "attempt[] to produce child pornography by communicating with only an adult intermediary").

the evidence must show that Moran intended, for instance, to "entice[] . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct" and that he "kn[ew] or ha[d] reason to know that such visual depiction w[ould] be transported or transmitted using any means or facility of interstate or foreign commerce." 18 U.S.C. § 2251(a).

Even viewing the evidence in the light most favorable to the government, Moran says, a jury couldn't conclude that he actually wanted—intended—the bloggers to post child pornography.[4] He says so for two related reasons. First, he asserts that specific intent requires that he "at least think [success] might be plausible," Br. of Appellant at 20, and that his efforts to procure child pornography via comments on mom-blogs were almost surely destined to fail. Second, he insists that he was obviously just "internet trolling"— that is, harassing the bloggers for his own entertainment—rather than actually trying to produce child pornography. We find neither argument persuasive.

As to the first, Moran is simply mistaken. A defendant's desire alone—wholly without respect to his likelihood of success—

---

[4] "We review the sufficiency of the evidence in a criminal trial de novo. We must: (1) view the evidence in the light most favorable to the government; (2) resolve any conflicts in favor of the government; (3) accept all reasonable inferences that tend to support the government's case; and (4) assume that the jury made all credibility choices in support of the verdict." *United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012) (citation omitted).

can establish his intent.  The Supreme Court has been perfectly clear about this:

> [A] person who acts . . . intends a result of his act . . . under two quite different circumstances: (1) when he consciously desires that result, whatever the likelihood of that result happening from his conduct; and (2) when he knows that the result is practically certain to follow from his conduct, whatever his desire may be as to that result.

*United States v. U.S. Gypsum Co.*, 438 U.S. 422, 445 (1978) (citing W. LaFave & A. Scott, *Criminal Law* 196 (1972)); *accord, e.g.*, *Tilton v. Playboy Ent. Grp.*, 554 F.3d 1371, 1377 (11th Cir. 2009) (observing that "'[p]urpose' refers to the desire that a particular result will occur").  Using the Supreme Court's terminology, Moran could have "consciously desired"—and thus intended—to produce child pornography, however remote the "likelihood of that result happening."

Moran's internet-troll theory suffers from a similar flaw.  On sufficiency-of-the-evidence review, it isn't "enough for a defendant to put forth a reasonable hypothesis of innocence" because the sole issue is whether a jury "reasonably could have found guilt beyond a reasonable doubt."  *United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012) (citation omitted).  And because evidence of one purpose doesn't exclude another, the government needn't prove that Moran "was single-minded in his purpose." *Id.*  Moran could have, for example, desired both outcomes—that his

messages would both (1) troll people *and* (2) result in the production of child pornography.

The fundamental question under the deferential sufficiency-of-the-evidence standard, then, is whether a jury could reasonably conclude that Moran consciously desired the bloggers whom he contacted to post pornographic images. The jury had ample evidence from which it could find that Moran had the requisite intent: (1) Moran's messages themselves; (2) his demonstrated sexual interest in children; and (3) his false exculpatory statements.

First, to state the obvious, evidence that Moran asked for child pornography *is* evidence that he desired to obtain—and thus to produce—child pornography. To be sure, the unlikelihood that Moran's mom-blog comments would actually net child pornography—and their consistency with a trolling theory—might *weaken* their evidentiary value. But they are most assuredly evidence. Two characteristics mark Moran's messages, in particular, as probative. For one, the sorts of pornographic images that they requested matched Moran's particular preferences. Two requests were for images of children on the toilet, and Moran's stash included a deleted folder called "Potty time" and files named "Toilet_Girls." And Moran's collection of children's underwear included some for kids the same age as the targeted bloggers'—between three- and six-years-old. For another, Moran used what might be viewed as persuasive tactics in his messages to increase their likelihood of success: In one, he bragged that his "niece loves to have her picture taken" in a particular way, implying that the

blogger's children would as well; in another, he emphasized that the blogger's children would be "smiling"; and in yet another, he suggested that a blogger buy her child a sex toy and sent her a link to it.

Second, Moran's sexual interest in children speaks to his desire to obtain child pornography. A jury could reasonably conclude that an individual who has more than 1,000 images of child pornography and 24 pairs of children's underwear—despite having no children living with him—meant what he said when he asked the bloggers to post or send him pictures. Cf. United States v. Gillis, 938 F.3d 1181, 1190 (11th Cir. 2019) (noting that possession of child pornography is evidence of intent to have sex with a minor).

Third, Moran's false exculpatory statements—dishonestly denying that he had ever posted under the pseudonym "Emily lover"—are substantive evidence of his guilt. See United States v. Hughes, 840 F.3d 1368, 1385 (11th Cir. 2016). Because Moran lied about not being "Emily lover," a jury could reasonably doubt his lawyer's suggestion during closing argument that his posts were just part of an elaborate joke and evidence of nothing but trolling.

In sum, the government presented sufficient evidence for a jury to conclude beyond a reasonable doubt that Moran consciously wanted the bloggers to make and send him child pornography—and that he therefore had the intent necessary for the attempted-production charge.

## B

Moran separately contends that there is insufficient evidence to satisfy § 2251(a)'s interstate-nexus element. Again, in relevant part, § 2251(a) makes it unlawful for any person to "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce." 18 U.S.C. § 2251(a).[5]

Plenty of evidence would allow a jury to reasonably conclude that Moran knew that, *if produced*—*i.e.*, if posted on the internet or sent to emilylover@aol.com—the child pornography that he sought would travel in interstate commerce. But Moran insists that to know that "such visual depiction" will travel interstate, he must first know *that there will be a visual depiction*. *See* Br. of Appellant at 34–38. That is, he says, he must know that his attempt to produce the photo will succeed. The government contends, by contrast, that he needed to know only that the depictions would move in interstate commerce *if produced*.

The government's reading is the better one. As relevant here, § 2251(a) contains three interrelated clauses. The first makes

---

[5] Section 2251(a)'s interstate-nexus element contains three independently sufficient clauses. *See United States v. Smith*, 459 F.3d 1276, 1289 (11th Cir. 2006). Here, however, the government relied only on the first.

clear that a completed violation requires proof of conduct:  A defendant must "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct." The second specifies that the defendant must have a "purpose of producing [a] visual depiction of such conduct."  And the third requires the defendant to "know[] or ha[ve] reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce."  Ordinarily, when one clause refers to an action, a second requires that action to be for the purpose of producing a thing, and the third refers to what someone "knows" about "such" thing, the final clause is understood to be implicitly conditioned on the successful production of the thing.  Consider the following illustrative example:

> John takes notes on his hikes for the purpose of producing a book about hiking, and he *knows* that *such* a book will sell millions of copies.

The average reader wouldn't take the last clause to mean that John knows *that* he will write a book— only that John knows what will happen *if he does write one*.

More generally, proscribing an action (*e.g.*, inducing certain conduct) rather than the outcome of that action (here, producing depictions) contemplates that the outcome might not result.  But when we ask what one "knows" about the product of "such" outcome, the question is ordinarily understood as taking for granted the attempt's success—and the outcome's realization.  So, for instance:

14                     Opinion of the Court                21-12573

> Jane is sending applications to out-of-state colleges. She *knows* that she will move away to attend *such* schools.

The latter sentence doesn't communicate anything about Jane's knowledge of whether her application for admission will be accepted—only her knowledge about what will happen *if it is*.

Moran's contrary reading—that a defendant must know in advance that his scheme will result in the production of child pornography—is untenable. While he emphasizes the unusual facts here—he says that he *knew* he would *fail*—his argument sweeps much more broadly: It would exculpate anyone who *didn't know* that he would *succeed*. But can any criminal ever really know ex ante that his scheme will succeed? On Moran's understanding, if a would-be child-pornography producer can show that he harbored any uncertainty about whether he might be arrested before he could complete his crime—or even more so, if the government couldn't prove that he had none—an acquittal would be required. That's pretty much every case.[6]

---

[6] To be clear, Moran's position wouldn't just insulate him from attempt liability; it would exculpate anyone who actually induces a minor to engage in explicit conduct with the hope of producing a depiction so long as the inducer wasn't certain that he would succeed in producing a depiction. Consider an example. An individual equips a room with cameras and connects them to a computer that randomly—*i.e.*, without any manual input—selects 50% of days to record. The individual then induces a minor to engage in sexual conduct in the room, with the hope that the act produces a visual depiction. If it was a recording day, he could argue, as Moran does here, that he didn't

We hold that in a prosecution for producing child pornography under § 2251(a), the government must prove that the defendant knew that, *if produced*, the pornography he sought would travel in interstate commerce. Under this standard—which applies to attempt prosecutions under § 2251(e) as well, *see, e.g.*, *United States v. Lee*, 603 F.3d 904, 913–14 (11th Cir. 2010) (requiring the same mens rea for attempt as for the completed crime)—the evidence against Moran is clearly sufficient.

## C

Finally, Moran contends that the evidence is insufficient to satisfy attempted production's actus reus element—namely, that he "took actions that constituted a 'substantial step toward the commission of [the] crime.'" *Yost*, 479 F.3d at 819 (quoting *United States v. Root*, 296 F.3d 1222, 1227–28 (11th Cir. 2002)). The problem is that he didn't challenge the sufficiency of the substantial-step element at trial when he moved for a judgment of acquittal.

---

"know" depictions would be produced such that they would travel in interstate commerce. But as we have explained, § 2251(a)'s third clause requires only knowledge that they will travel in interstate commerce *if they are produced*.

And the oddity of Moran's position doesn't end with § 2251(a). Sections 2251(b)—which provides for punishment of parents who allow their children to be used for child pornography—and 2251(d)—which provides for punishment of those who solicit child pornography—contain similar language. *See* 18 U.S.C. §§ 2251(b) ("such . . . person knows or has reason to know that such visual depiction will be transported"), 2251(d)(2)(A) ("such person knows or has reason to know that such notice or advertisement will be transported").

Instead, he argued only that the government hadn't presented sufficient evidence of his *intent*. *See* Doc. 171 at 131–32. Accordingly, we may review Moran's sufficiency challenge to the substantial-step element only for plain error. *See United States v. Baston*, 818 F.3d 651, 663–64 (11th Cir. 2016); *United States v. Dunlap*, 279 F.3d 965, 966–67 (11th Cir. 2002).

To establish plain error, Moran must show that "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014). With respect to the second prong, in particular, we have held that in the absence of "explicit language of a statute or rule," an error "cannot be plain unless the issue" in question has been "specifically and directly resolved by . . . on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019).

Moran hasn't met his burden of establishing all four prongs of the plain-error standard. *See Greer v. United States*, 141 S. Ct. 2090, 2097 (2021). In an effort to satisfy the second prong, Moran invokes just one relevant decision, *United States v. Lee*, 29 F.4th 665 (11th Cir. 2022). But *Lee* is hardly "on point" within the meaning of our plain-error precedents. The portions of *Lee* that Moran cites deal with completed violations of § 2251(a), not attempts. The critical language—"arrange for a minor to engage in sexually explicit conduct," *id.* at 671—comes directly from *United States v. Ruggiero*, 791 F.3d 1281, 1284–85 (11th Cir. 2015), in which the

defendant pleaded guilty to a completed violation of § 2251(a) and an attempted violation of § 2422(b).  *Id.* at 1284.  Moreover, and in any event, Moran hasn't even attempted to show that he satisfies the last two prongs of the plain-error standard.  Accordingly, he hasn't shown an entitlement to plain-error relief.

### III

For the foregoing reasons, we hold (1) that a defendant's desire to produce child pornography is sufficient to establish his intent for purposes of proving an attempted violation of § 2251(a), no matter how unlikely his attempt is to succeed, and that the evidence here was sufficient to establish Moran's desire; (2) that § 2251(a)'s interstate-commerce element does not require a defendant to know ex ante that child pornography will be produced, and that there was sufficient evidence of Moran's knowledge that the images, *if produced*, would travel in interstate commerce; and (3) that Moran's belated substantial-step argument fails plain-error review.

**AFFIRMED.**