[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-14335

Non-Argument Calendar

_____

KONSTANTINOS VARESIS,

Plaintiff-Appellant,

*versus*

MICHAEL JOSEPH LANDRY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cv-00084-KD-M

_____

Before LAGOA, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Konstantinos "Kova" Varesis and Michael Joseph Landry were student-athletes at Spring Hill College in Mobile, Alabama. One night, a fight between players on the school's soccer and golf teams broke out during an on-campus party. Varesis, a soccer player, and Landry, a golfer, were both involved. The exchange between the two teams ended abruptly when Landry punched Varesis, knocking him unconscious.

Varesis sued Landry for negligence and wantonness, and the case proceeded to a two-day jury trial. The jury found Landry liable, but it also found that Varesis was negligent and awarded Varesis $1 in compensatory damages and $20,000 in punitive damages. Varesis now appeals, arguing that the district court improperly instructed the jury. After careful review, we affirm.

## I.    BACKGROUND

In 2019, Landry was a student at Spring Hill College and a member of the school's golf team. On February 23, 2019, Landry attended a late-night party at Fairway Apartments, a student residential building on the college's campus, with several of his teammates, including Grayson Glorioso. About fifty or sixty people were at the party. One of the attendees was George Brown, a member of Spring Hill's soccer team.

At the party, a heated argument between Brown and Glorioso ensued when Brown made a comment about Glorioso's girlfriend. Glorioso invited Brown to talk outside. Brown then sent several of his teammates, including Varesis, a Snapchat message saying that "[s]tuff is going down with the golf players." Varesis was not at the party at the time. When he received Brown's message, he left his dorm room and walked toward the Fairway Apartments.

Varesis arrived amid a heated exchange between three golf players and seven or eight soccer players in a breezeway outside of the party. Varesis and other soccer players shouted at Glorioso and Landry to leave the area. The two groups continued to exchange profanities, with Varesis standing toward the front of the soccer team and yelling at Landry and Glorioso to "[g]et the fuck out." Additionally, one of the soccer players swung an umbrella, and another threw a glass beer bottle, toward the golf players. Dionte Rudolph, a student and resident adviser for a Spring Hill dormitory, heard about the commotion and walked to the parking lot. Rudolph tried to calm Landry down. She placed her arm around him and began guiding him away from the soccer team.

Several soccer players taunted the golfers as they walked away, singing, "[N]ah, nah, nah, nah, nah, nah, nah, nah, hey, hey, goodbye." Angry about the taunting, Landry broke away from Rudolph and ran toward the soccer players. Landry punched Varesis, then ran away.

Varesis immediately collapsed onto the pavement. He lost consciousness, and his head began bleeding. An ambulance transported Varesis to the hospital, where an ER doctor determined that he had suffered epidural, subdural, and intraparenchymal hemorrhages. Varesis had suffered a previous concussion before the incident.

The fight on February 23, 2019, was not the only one in which the soccer team was involved. Several months prior, the Spring Hill soccer and tennis teams engaged in a brawl after a tennis player slapped a soccer player. Varesis was present at this brawl as well.

At trial, the parties presented conflicting evidence of Varesis's condition after being punched by Landry. One of Varesis's teammates testified that Varesis was "not the same Kova" and "was sad every day" when he returned to school. The Spring Hill soccer coach thought that Varesis was "off pace" after the injury. Varesis also had frequent, sharp headaches. Still, Varesis finished the spring semester at Spring Hill and briefly returned to playing soccer. Despite his injury, and despite having earned a 2.98 GPA during the fall semester, Varesis earned a 3.94 GPA for the spring semester.

Varesis briefly returned to Spring Hill in August 2019. In his first game of the new season, he suffered a concussion after "heading" a soccer ball. After this incident, he experienced a constant migraine headache. Not much later, Varesis left Spring Hill and

returned home to Greece.  He then enrolled in the Agricultural University of Athens, where he earned high grades.

In February 2021, Varesis filed suit against Landry in the United States District Court for the Southern District of Alabama, asserting claims of negligence and wantonness under Alabama law. The case proceeded to trial.  Before trial, Varesis and Landry each individually filed proposed jury instructions.  The parties also jointly filed proposed jury charges.  As relevant here, the parties' joint submission included a version of Alabama Pattern Jury Instruction 11.10.  That proposed instruction provided:

> Mr. Varesis says that he has had pain and suffering, mental anguish, and emotional distress and will have future pain and suffering, mental anguish, and emotional distress.  There is no legal rule or yardstick that tells you how much money to award for physical pain or mental anguish.  The amount you decide to award is up to you, but it must be fair and reasonable, based on sound judgment, and proved by the evidence.  In deciding the amount of the award, you may consider, among other things, the nature, severity, and length of time Mr. Varesis had past physical pain and mental anguish.  You should award Mr. Varesis an amount for future physical pain and emotional distress if Mr. Varesis has proved that it is reasonably certain that he will have physical pain and emotional distress in the future.

Similarly, Varesis's individual submission included an instruction modeled after Alabama Pattern Jury Instruction 11.09:

Mr. Varesis asks for damages for the following:

- Past physical pain

- Future physical pain

- Past mental anguish and emotional distress

- Permanent injuries

- Past loss of enjoyment of life

- Future loss of enjoyment of life

After the first day of trial, the district court circulated a draft of the jury instructions and verdict form to the parties. The draft instructions did not include either Alabama Pattern Jury Instruction 11.09 or Alabama Pattern Jury Instruction 11.10. The next day, the district court conferenced with the parties about the instructions. The district court began the conference by asking, "I didn't get any objections to the instructions. Is that correct from the plaintiff?" Varesis's counsel stated that it was.

Later during the same conference, Varesis's counsel asked, "Well, the only reservation that I can—these are—these are not the jury charges. This is just the Court's instruction, right?" The district court answered, "It says, 'Final Instructions to the Jury,' and, at the top, it has 'draft' right there. I'm going to hand those to the jury, and I'm going to read it to them."

Varesis's counsel again asked about the draft instructions toward the end of trial. He told the district court, "I didn't know if this was just going to be your final instructions or that you were going to do like in the beginning when you gave the jury

instructions about the trial before we started." The district court responded, "Okay. I'm just trying to understand you. So what other kind of instructions am I supposed to give?" After some back-and-forth, the district court stated, "I'm not sure where the confusion is. There is no other charge to give. This is it. So that's why I keep asking, are there any objections to this charge." At that point, Varesis's counsel responded that he objected that the draft jury instructions did "not include a charge for permanent injuries or the mortality tables." The district court overruled the objection on the ground that no medical evidence supported permanency. The district court again asked whether there were further objections to the jury instructions. Varesis's counsel replied, "No, Your Honor."

In his closing argument to the jury, Varesis argued that Landry acted negligently and wantonly, and, accordingly, he asked the jury to award him $194,700 in compensatory damages and $584,100 in punitive damages. Landry argued that he punched Varesis in self-defense. He also argued that Varesis was contributorily negligent. Then, addressing damages, Landry's counsel advised the jury that Varesis was "only asking to be compensated, as the verdict form is going to say, for pain and suffering, mental anguish"—not for "medical expenses, tuition, anything like that." Landry asserted that Varesis's treating physician did not find that Varesis suffered any lasting brain injuries, and other evidence demonstrated that Varesis simply carried on with his life, reenrolled in another university, and earned good grades as he did previously. In Varesis's rebuttal argument, his counsel confirmed to

the jury that Varesis was asking only for compensatory damages amounting to "$100 a day from when he got punched until today . . . for the physical injuries and the pain and the suffering that he's endured," in addition to "$50 a day for the mental anguish and emotional distress that he's been through since that time."

The district court then instructed the jury, excluding the proposed Alabama Pattern Jury Instructions 11.09 and 11.10 in doing so.  The district court instructed the jury:

> Varesis asks you to award compensatory damages for the harm caused by Landry, and he also asks you to award punitive damages.
>
> Now, as to compensatory damages, they are awarded to fairly and reasonably compensate for the harm caused by another's wrongful conduct.  Varesis must prove the amount of compensatory damages to a reasonable satisfaction from the evidence and reasonable inferences from the evidence.  You can't guess at the amount of damages. . . .
>
> Before you can award punitive damages, you must have decided to award Varesis compensatory or nominal damages, and Varesis must have proved, by clear and convincing evidence, that Landry consciously or deliberately acted towards Varesis with wantonness. So the only way that you can award punitive damages is if you find for Mr. Varesis on the wanton claim.

The jury then retired to deliberate.  The verdict form contained three questions on damages, including question number 5, which read:

> **5.** What amount of compensatory damages will fairly and reasonably compensate Konstantinos Varesis for his injuries?
>
> Physical injury, pain, suffering and mental anguish $_____

During deliberations, the jury submitted a question to the district court.  It asked, "Can Varesis be awarded punitive damages without compensatory?"  After discussing the matter with the parties, the district court answered,

> Before you can award punitive damages (1) you must have decided to award Varesis compensatory **or** nominal damages; and (2) Varesis must have proved by [clear] and convincing evidence that Landry consciously or deliberately acted toward Varesis with wantonness.
>
> Nominal damages are a small amount of money awarded, for example $1, when you are reasonably satisfied from the evidence that Varesis has been harmed, but Varesis has not proved the amount that you should award.  If you find that Varesis is due nominal damages instead of Compensatory damages, indicated such in question #5 by writing in nominal damages and indicating an amount.

Varesis's counsel suggested that he objected to the district court's answer, but then withdrew the objection:

[Varesis's Counsel]: The other thing is that Varesis has not proved the amount that you should award, I think it may be a misstatement because he's entitled maybe—

THE COURT: That's directly from the Alabama jury charges.

[Varesis's counsel]: It is?

THE COURT: Yes.

[Landry's counsel]: No objection from the defense.

THE COURT: Any other objection?

[Varesis's counsel]: No.  No, Your Honor.

The jury returned a verdict finding that Landry was negligent and wanton and did not act in self-defense.  But the jury also found Varesis comparatively negligent.  The jury wrote "$1.00" as the answer to question 5, finding that Varesis was entitled only to $1 for his "[p]hysical injury, pain, suffering, and mental anguish."  The jury also awarded Varesis $20,000 in punitive damages.  The district court entered judgment for Varesis in the amount of $20,001.

Following the verdict, Varesis filed a motion for a new trial under Federal Rule of Civil Procedure 59.  Varesis argued that he was entitled to a new trial because the district court failed to give Alabama Pattern Jury Instructions 11.09 and 11.10, resulting in prejudice.  Varesis argued that the jury's verdict was against the weight of the evidence.  Varesis also asserted that the district

court's omission of jury instructions regarding permanent injury and a mortality table warranted a new trial.

Landry responded to Varesis's motion, contending that Varesis failed to timely object to the omission of the relevant instructions, so plain-error review applied. And, Landry argued, Varesis had not shown plain error. Landry further contended that Varesis did not present sufficient evidence of a permanent injury, so the district court did not err in excluding mortality tables from the evidence. And last, Landry argued that the jury's verdict accurately reflected the weight of the evidence.

The district court agreed with Landry, adopting several sections from his opposition brief as its reasoning. This appeal followed.

## II.    STANDARD OF REVIEW

"[W]e review a district court's refusal to give a particular jury instruction for abuse of discretion." *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1261 (11th Cir. 2017). But when the appealing party failed to object to the exclusion of the instruction before the jury deliberated, we review only for plain error. *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 975 (11th Cir. 2016) (citing Fed. R. Civ. P. 51).

## III.    ANALYSIS

Varesis raises a single argument on appeal: that the district court abused its discretion in denying his motion for a new trial because, by not giving Alabama Pattern Jury Instructions 11.09 and 11.10, the district court failed to instruct the jury on how to

determine damages for pain, suffering, and mental anguish.[1]  This argument faces a significant obstacle at the start, however.  As Landry points out, Varesis did not object to the exclusion of the instructions until his motion for a new trial—i.e., after the district court entered judgment.  And if Landry is correct, we must review the district court's instructions only for plain error.

Federal Rule of Civil Procedure 51 governs objections to jury instructions, so we apply it to determine whether Varesis timely objected below.  Rule 51(b) requires district courts to inform the parties of the jury instructions it plans to give before closing arguments and to "give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered."  Fed. R. Civ. P. 51(b).  Under Rule 51(c)(2), an objection to a jury instruction or the failure to give an instruction is timely if either the party objects at the opportunity provided by the district court or the party "was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused."  Fed. R. Civ. P. 51(c)(2).

Rule 51(d) spells out the consequences of a timely objection—and of the failure to make one.  The rule permits parties to

---

[1] Varesis argues that the jury's verdict contradicts the great weight of the trial evidence, but he asserts only that this disconnect "evidence[s]" the prejudice caused by the district court's erroneous exclusion of the proposed jury instructions.  Thus, this argument is not an independent basis for a new trial.

assign as error "a failure to give an instruction, if that party properly requested it *and . . . also properly objected*." Fed. R. Civ. P. 51(d)(1)(B) (emphasis added). If the party did not preserve its objection, "[a] court may consider a plain error in the instructions . . . if that error affects substantial rights." Fed. R. Civ. P. 51(d)(2); *see also Vista Mktg.*, 812 F.3d at 975. We have read Rule 51 "strictly" and thus "require a party to object to a jury instruction or jury verdict form *prior* to jury deliberations in order to preserve the issue on appeal." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999).

Although Varesis proposed versions of Alabama Pattern Jury Instructions 11.09 and 11.10, the question is whether he "also properly objected" after being informed of the district court's proposed instructions. Fed. R. Civ. P. 51(d)(1)(B). Reviewing the record, it is clear that he did not. In fact, Varesis admits that his counsel did not even notice the omission until after trial. Instead, Varesis argues that he did not have a fair opportunity to object because of the time constraints of a two-day trial and the formatting of the district court's proposed instructions. But this argument is largely beside the point and, in any event, unpersuasive. Varesis concedes that the draft instructions circulated by the district court after the first trial day did not include Alabama Pattern Jury Instructions 11.09 and 11.10 and that his counsel had time to "spen[d] at least two hours reviewing, discussing, and editing" the district court's three-page draft verdict form the same night. When the district court brought up the jury instructions at its conference the next day, Varesis's counsel did not request more time to review the draft

instructions.  To the contrary, he unequivocally stated that he had no objection to the draft instructions.  He later confirmed that he had no further objections after separately objecting to the omission of an instruction on permanent injuries.

Trial no doubt places difficult demands on parties, their counsel, and trial courts.  But that fact only makes it more important, not less, for parties to raise timely, specific objections to errors they seek to correct.  *See, e.g.*, *Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002) (explaining that Rule 51 requires timely objections "to prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time" (quoting *Pate v. Seaboard R.R.*, 819 F.2d 1074, 1082 (11th Cir. 1987))).  And because Varesis belatedly objected to the district court's exclusion of Alabama Pattern Jury Instructions 11.09 and 11.10, we must review the exclusion only for plain error.

"Plain error review is an extremely stringent form of review."  *Farley*, 197 F.3d at 1329.  To prevail under plain-error review, "a party must show (1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) failure to correct the error would 'seriously affect the fairness of the judicial proceeding.'"  *Vista Mktg.*, 812 F.3d at 975 (quoting *Farley*, 197 F.3d at 1329).  A party challenging jury instructions as plainly erroneous must show that the instructions "misled the jury or left the jury to speculate as to an essential point of law" and that the erroneous instruction "was probably responsible for an incorrect verdict,

leading to substantial injustice." *DeJesus v. Lewis*, 14 F.4th 1182, 1199 (11th Cir. 2021) (quoting *Farley*, 197 F.3d at 1329). The appellant bears the burden of proving that each prong of the plain-error test is met. *See Pulliam v. Tallapoosa Cnty. Jail*, 185 F.3d 1182, 1188 (11th Cir. 1999); *United States v. Moran*, 57 F.4th 977, 984 (11th Cir. 2023). "[R]eversal for plain error in the jury instructions or verdict form will occur 'only in *exceptional cases* where the error is "so fundamental as to result in a miscarriage of justice."'" *Farley*, 197 F.3d at 1329 (quoting *Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999)).

Varesis argues only that the district court abused its discretion in omitting his proposed instructions. Although Landry argued in his brief that we must review the omission for plain error, Varesis did not mention the plain-error standard anywhere in his briefing. Because Varesis has not argued—even in the alternative—that the district court plainly erred, he cannot meet his burden of establishing that he has satisfied each prong of the plain-error standard. *See, e.g., United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2004) (holding that the appellant did not meet his burden with respect to one prong of the plain-error standard because he did "not point to anything indicating" that he could satisfy that prong); *see also United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide argument on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived.").

But even considering the merits, we find no plain error. "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993). Accordingly, "'[p]lain error' review under Rule 51 is suited to correcting *obvious* instances of injustice or misapplied law." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 257 (1981) (emphasis added). In other words, it is not enough to show that an error occurred; the error must be clear and obvious under existing law. *See, e.g.*, *Wammock v. Celotex Corp.*, 835 F.2d 818, 821–22 (11th Cir. 1988) (explaining, in a diversity case, that even though a jury instruction was "an incorrect statement of Georgia law," the error was not plain).

Varesis argues that because the district court excluded his version of Alabama Pattern Jury Instruction 11.09 from its instructions, the jury was not informed that it could award damages for pain, suffering, and mental anguish. The record contradicts his argument. Both Varesis's and Landry's closing arguments made clear to the jury that Varesis was seeking damages for his physical injuries, pain, suffering, and mental anguish. And so did the verdict form. Question 5 of the verdict form expressly described the type of compensatory damages the jury was to consider: "[p]hysical injury, pain, suffering, and mental anguish." "[W]e review jury instructions and verdict forms together rather than separately for reversible error." *Farley*, 197 F.3d at 1329. Thus, given the verdict form, trial evidence, and parties' closing arguments, Varesis has not shown plain error because he has not pointed to binding case law requiring his requested instructions under these circumstances. *See Ford*, 289 F.3d at 1292 (holding that appellants did not show plain

error because "no case law exists clearly" supporting their position).

Varesis also contends that the district court's instructions did not give the jury a complete framework for calculating his damages for pain, suffering, and mental anguish. In particular, Varesis focuses on the district court's instruction that the jury could not "guess" as to the amount of compensatory damages, contrasting that instruction with the portion of Alabama Pattern Jury Instruction 11.10 that provides, "[N]o legal rule or yardstick that tells you how much money to award for physical pain or mental anguish." But Varesis ignores other parts of Alabama Pattern Jury Instruction 11.10 that closely mirror the instructions the district court gave. For example, although Alabama Pattern Jury Instruction 11.10 states that no "yardstick" directs a jury exactly how to calculate pain, suffering, and mental anguish damages, that instruction also requires any amount awarded to "be fair and reasonable, based on sound judgment, and proved by the evidence." Therefore, it was not plainly erroneous for the district court to tell the jury that it could not "guess" the amount of pain, suffering, and mental anguish damages suffered by Varesis. And again, Varesis has not pointed to any Alabama case law suggesting that excluding his requested instructions was error, so any error committed by the district court was not plain. *See Ford*, 289 F.3d at 1292–93 (finding no plain error where "no [governing] decision . . . has addressed this issue" and "no clear case law exists" to the contrary).

Varesis also has not carried his heavy burden of demonstrating that the district court's jury instructions were "probably responsible for an incorrect verdict." *Farley*, 197 F.3d at 1330 (quoting *Noga*, 168 F.3d at 1294). The parties and the district court made it abundantly clear through argument, evidence, and the verdict form that Varesis sought damages for pain, suffering, and mental anguish. And the trial evidence supported the jury's finding that even though Landry was liable, Varesis did not suffer significant damages because of it. Evidence elicited at trial suggested that Varesis's grades improved after the incident and that Varesis suffered concussions both before and after Landry punched him that might have caused his headaches. And, as discussed, the instructions given by the district court mirrored Alabama Pattern Jury Instruction 11.10 in relevant part. We thus cannot conclude on this record that Varesis has satisfied his burden of showing that the district court's purported error affected his substantial rights.

For all of these reasons, we affirm the judgment below.

**AFFIRMED.**